Lillie M. Cooper, et al., Plaintiffs-Appellees, v. Frank Brogni and Julian J. Luster, Defendants-Appellants.

Gen. No. 49,303.

First District, Third Division.

June 11, 1964.

Samuel S. Cohon, of Chicago, for appellants.

Richard Altieri, of Chicago, for appellees and cross-appellants.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

The decree in the instant case rescinds certain contracts with respect to the sale and purchase of property and enters judgment against the defendants for $4,000, being the earnest money paid by plaintiffs. A clause in the preliminary sales contract made between the parties provides that if prior to delivery of deed the property should be destroyed or materially damaged by fire, the contract at the option of the purchaser should become null and void. A fire did destroy the property before delivery of the deed, and the principal issue is whether this clause should be applied.

Plaintiff Lillie M. Cooper, a widow, sought a new home for herself and her family when the house she owned and lived in was subject to eminent domain

proceedings. She was told that a two-story apartment building at 3048 Arthington Street, Chicago, was for sale. Title to the building was in the Cosmopolitan National Bank of Chicago as trustee. Julian J. Luster, a lawyer, and his wife were the beneficiaries of the trust, and conveyance of the property was presumably subject to their direction. Defendant Frank Brogni had been associated with Luster for many years in the business of purchasing and selling real estate.

On July 25, 1958 plaintiff Lillie M. Cooper entered into a preliminary real estate contract with Brogni for the purchase of the property for $12,000, to be paid as follows: $1,000 in earnest money, $3,000 when title had been shown to plaintiffs' satisfaction, and the balance at $100 a month. Luster did not sign the contract, but is named therein as holder of the earnest money. No point is made on the failure of Luster to sign the contract, and he acknowledges that he and his wife were the real parties in interest. The contract, described as a Chicago Title & Trust Company form, provided as follows:

> "If, prior to delivery of deed hereunder, the improvements on said premises shall be destroyed or materially damaged by fire or other casualty, this contract shall, at the option of purchaser, become null and void."

It further provided that if the contract was terminated for reasons other than the purchaser's default, the earnest money would be returned to the purchaser. A typewritten addition to the printed form, prepared by Luster, provided for articles of agreement for trustee's deed, and stated that the articles would contain provisions entitling the purchaser to receive a deed when she had paid one-half the purchase price, the balance of $6,000 to be secured by a mortgage.

At the signing of the preliminary contract on July 25, 1958, Luster agreed that plaintiffs could move into the premises as soon as evidence of title had been shown to Lillie Cooper's satisfaction and she had deposited with him as escrowee the sum of $4,000. Plaintiff Lillie M. Cooper signed the preliminary sales contract and made the deposit. Unknown to her, Charles V. Muscarello, her attorney, was to receive a cobrokerage fee of $280.

On August 7, 1958, plaintiff and her four adult children, coplaintiffs, signed the articles of agreement for trustee's deed prepared by Luster. At the closing, plaintiffs and Luster, Brogni and Muscarello were present. The latter, although the attorney for plaintiffs, did not read the articles nor was he shown an opinion of title at or prior to the meeting. No closing statement was prepared and no one represented the Cosmopolitan National Bank. The original and duplicate of the articles of agreement were retained by Luster, who gave the documents to Brogni to obtain the signature thereon of the bank as trustee, and keys to the property were delivered to Mrs. Cooper.

There is a conflict of testimony as to whether the contract was signed by the bank as trustee on August 7, 1958, prior to the fire hereinafter referred to. Brogni testified that he sent his girl to the bank and procured the bank's signature, and that he delivered the articles of agreement to Muscarello. Luster corroborates this, while Muscarello denies it.

During the night of August 7th or early the following morning, before plaintiffs moved in, a fire of unknown origin substantially destroyed the building. On the morning of August 8th, immediately after learning of the destruction of the property, Lillie M. Cooper went to Luster's office and demanded the return of her $4,000 deposit. Luster, after collecting $10,500 from insurance companies on the loss, refused

74

to return the $4,000 down payment to Mrs. Cooper. This suit followed.

Issue was joined and the cause was referred to a master. He held hearings and duly recommended that the chancellor enter a decree rescinding the contracts and entering judgments against defendants for $4,000 plus interest and costs. The chancellor affirmed the master's report, but denied plaintiffs' prayer for interest from August 8, 1958, the date of the fire, allowing interest only from the date of judgment, February 20, 1963. Defendants appealed, and plaintiffs filed a cross-appeal.

Defendants argue that the preliminary sales agreement and the articles of agreement for a trustee's deed were properly executed and delivered because they were signed by Cosmopolitan National Bank of Chicago and delivered to Muscarello before the fire. The master found otherwise, and there is ample support in the record for his finding.

■ Even assuming the articles were properly executed and delivered, the trial court's decree should be affirmed. Defendants argue that there is a conflict between the printed portion of the preliminary real-estate contract, which gives the purchaser the option to terminate upon material destruction of the improvements by fire before delivery of deed, and the typed provision, which contemplates delivery of deed when the purchaser had paid $6,000 of the $12,000 purchase price. We have no quarrel with the general maxim that where there is a conflict between the written and printed portions of a contract, the written will prevail (Papulias v. Wirtz, 331 Ill App 376, 73 NE2d 122) but we are unable to find any conflict between the written and printed portions of this contract. The printed portion gives the purchaser an option to terminate the contract in case of fire prior to delivery of deed, whereas the typed portion fixes

the date when the deed was to be executed and delivered to the purchaser. Implicit in defendants' argument is an assertion that it is unfair that the purchaser have the option to terminate the contract because of fire for such a long time, that is, until $2,000 is paid at the rate of $100 a month, or nearly two years after the signing of the articles. We see nothing unfair in such an agreement.

Defendants attempt to avoid the force of the clause giving the purchaser the option to terminate before delivery of deed by arguing that the articles of agreement for a deed constitute a substituted contract and novation at law and therefore the agreement between the parties must be examined in the light of the articles of agreement for deed only. While a novation may be a substituted contract between the same two parties, the crucial question is whether the parties intended to extinguish the old contract and substitute a new one in its place. Printing Mach. Maintenance v. Carton Products Co., 15 Ill App2d 543, 147 NE2d 443. We find no such intention here. The preliminary real-estate contract called for signing of the articles of agreement for a deed, and the two documents must be interpreted as the contractual arrangement for the purchase of a single piece of property.

Plaintiffs argue that the court erred in denying interest from the date the earnest money was paid to Luster and in limiting the running of interest from the date of entry of the decree, February 20, 1963. They point to the statute (Ill Rev Stats c 74, § 2 (1963)) which provides that:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any . . . instrument in writing. . . ."

76

While the preliminary sales contract provided for the return of the deposit to the purchaser if the sales contract was terminated without plaintiffs' fault, plaintiffs became the creditors of defendants within the meaning of the statute only upon the entry of judgment on February 20, 1963.

■ ■ Plaintiffs also argue that there was an unreasonable and vexatious delay in the payment of money withheld so as to require defendants to pay interest from the date of the demand for its return. Ill Rev Stats, ch 74, § 2 (1963). Interest is allowed in chancery where warranted by equitable considerations. It has been held that in order to have an unreasonable and vexatious delay which would authorize a court of chancery to award interest, there must be something more than mere delay of payment, and the appearance and defense of a suit is not considered such delay. There must be contrivance on the part of the litigant causing the delay which comes very close to actual fraud. Firemen's Ins. Co. of Newark, New Jersey v. Newell, 10 Ill App2d 371, 135 NE2d 116; Lewis v. West Side Trust & Savings Bank, 376 Ill 23, 32 NE2d 907; Imperial Hotel Co. v. H. B. Claflin Co., 175 Ill 119, 51 NE 610.

■ While the shadow of inequity hangs over this transaction, we cannot say it is fraudulent or approximates fraud. The trial court correctly decided that this was not a proper case for the allowance of interest before judgment.

The decree is affirmed.

Decree affirmed.

DEMPSEY and SULLIVAN, JJ., concur.