RAY W. LAMPHERE, Plaintiff-Appellee, v. THE OLD SECOND NATIONAL BANK OF AURORA et al., Defendants-Appellants.

Second District (1st Division)    No. 75-77

Opinion filed June 24, 1976.

Peter K. Wilson and Donald L. Puckett, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellants.

William Murphy, Robert L. Speers, and Gary G. Piccony, all of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, and Peterson, Ross, Rall, Barber & Seidel, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Between 1944 and 1951 the plaintiff, Ray W. Lamphere, an employee of the defendant, The Old Second National Bank of Aurora (hereinafter Bank), embezzled some $67,000 from the Bank, although the exact amount is not known. Thereafter, until October, 1970, plaintiff concealed his misdeeds from the Bank and rose in rank from manager of the installment loan department to vice president. On November 4, 1970, after the Board of Directors had voted to discharge plaintiff, but before that action was communicated to him, plaintiff's attorney resigned for him. Thereafter, plaintiff pled guilty in Federal court to alteration of bank records and received probation. Employers Mutual Liability Insurance Company of Wisconsin (hereinafter Employers—not a party to this appeal) had issued a Bankers Special Bond to the Bank and, pursuant thereto, settled the Bank's claim under the bond by paying the Bank $50,000. In November, 1972 plaintiff instituted the instant action seeking proceeds from the Profit Sharing Trust and the Pension Plan, naming the Bank and the trustees of the plans as defendants. The Bank was dismissed as a defendant upon motion of plaintiff but later intervened in this action. Employers intervened in this action and, by stipulation of the parties, obtained a judgment against plaintiff in the amount of $84,492.24 (an agreed amount of $40,000 plus $44,492.24 interest). This judgment provided that, should plaintiff obtain judgment in his action against the trustees, the trustees shall pay the proceeds of the judgment to Employers which shall be entitled to first retain $50,000 and then shall remit the excess to the Bank. The cause was submitted to a jury which returned a verdict in favor of plaintiff in the amount of $61,367.13. The trustees appeal.

On appeal the trustees argue (1) that any alleged rights which plaintiff acquired under the plans were acquired by fraudulent conduct and that plaintiff should therefore be held, as a matter of law, to be barred from recovery thereunder; (2) that plaintiff failed to establish that he met the eligibility requirements of the plans; and (3) that the trial court erred in submitting the plans to the jury and in refusing two of defendants' tendered instructions.

In Count I of his complaint, plaintiff alleged that prior to November 4, 1970, he had been an employee, regularly employed by the Bank on a permanent basis for 22 years and was ordinarily scheduled to work full time in the Bank. He also alleged that on November 4, 1970, he was 64 years of age, a participant in the Profit Sharing Trust and had approximately $50,000 in the trust fund which had been allocated to him. He then alleged that on November 4, 1970, he resigned as an employee of the Bank and was entitled under the provisions of the Trust to receive the amounts which had been credited to him. In Count II plaintiff alleged that under the Bank's pension plan he was entitled to receive certain

retirement benefits and pension when he resigned from the Bank after having attained age 60 but before reaching age 65.

In their answer to both counts of the complaint, defendants denied that plaintiff was " 'regularly employed' within the full meaning" of the phrase. They further alleged that plaintiff is barred from recovery both pursuant to the provisions of the plans and as a matter of law, because he was dismissed for cause.

Both the pension plan and profit sharing trust, which were adopted in 1953, were funded solely by the Bank without contribution by the employees. There was testimony by the trustees that the plans were not in the nature of gratuities, but were rather in the nature of fringe benefits designed to make employment at the bank attractive and competitive and were as much a part of the employees' compensation as their paychecks.

The pension plan contains no provision for a forfeiture of rights upon dismissal for cause. The profit sharing trust, on the other hand, contains a provision under which a participant in plaintiff's position would, in substance, receive nothing thereunder if he were "* * * dismissed for a cause, namely * * * embezzlement * * *." Both plans defined employee as "any person regularly employed by the bank on a permanent basis and who is ordinarily scheduled to work full time * * *." The profit sharing trust defined "participant" as "any Employee who meets the eligibility requirements of the Plan."

■■ We first consider whether plaintiff forfeited his rights under the plans by his embezzlement and subsequent concealment thereof. The trustees argue that plaintiff admitted that he continued a course of deceptive conduct in order to maintain his employment and gain benefits from the plans. They then refer us to the familiar principle that one may not profit from his own wrong. Plaintiff and Employers, which filed an *amicus curiae* brief, argue that plaintiff's rights under the plans should be determined solely with reference to the requirements of the plans which, under the evidence adduced at trial, plaintiff met. In addition, it is argued that plaintiff is not seeking to benefit from his own wrong, but rather is seeking to benefit from his employment. Plaintiff and Employers argue that plaintiff testified that from 1951 he intended, upon reaching retirement age, to admit his wrong to the Bank and make the Bank whole by paying his retirement funds and, if necessary, borrowed funds to the Bank. Also, in view of the judgment in favor of Employers, it is argued that if the judgment below is affirmed, plaintiff will not receive the proceeds of the judgment but rather the proceeds will go to Employers and to the Bank to effect restitution.

Although we do not condone plaintiff's conduct, we find the arguments of plaintiff and Employers persuasive under this factual situation and find that plaintiff's rights under the plans should be determined in accord with

the provisions of the plans. (See *Cowles v. Morris & Co.* (1928), 330 Ill. 11, 161 N.E. 150; *Anger v. Bender* (1975), 31 Ill. App. 3d 877, 335 N.E.2d 122.) While it is undisputed that plaintiff embezzled funds from the Bank and thereafter concealed his wrongdoing, it is also true that plaintiff rendered valuable services to the Bank during his employment for which he is entitled to receive his due, albeit deferred compensation. It is also true that the proceeds of plaintiff's judgment will, under Employers' judgment, operate to effect restitution rather than accrue to plaintiff's direct benefit.

Despite the trustees' protestations to the contrary, we find the case of *Anger v. Bender* highly analogous to the instant case. There, the trustees of a pension trust and profit sharing plans sought a declaratory judgment that a former employee had forfeited his rights under the plans as a result of his disloyalty to his former employers, to-wit, by making confidential information and trade secrets available to a competitor among other alleged wrongs. The employee had terminated his employment with the companies involved prior to discovery of his alleged misconduct. The plans both contained a provision for forfeiture of rights upon discharge for cause. Also, contrary to the present case, the pension trust therein stated that its purpose was "to reward eligible employees for their loyal and faithful service * * *."

Rejecting many of the arguments which are raised in this case by the trustees, the court determined the former employee's rights under the plans solely with reference to the provisions of the plans. It found that the defendant had not been discharged for cause and that the pension trust's statement of purpose, if requiring interpretation at all, should be construed liberally in favor of the employee. Since the defendant therein had met the eligibility requirements of the plans, the court affirmed the dismissal of plaintiff's complaint seeking a declaration of forfeiture.

We, therefore, reject the trustee's contention that plaintiff is barred from recovery under the plans as a matter of law.

We now address ourselves to defendant's second contention—whether the evidence established that plaintiff met the eligibility requirements of the plans. We find first that the evidence established that plaintiff was not dismissed for cause, since he resigned prior to being notified of the action of the Bank's Board of Directors to discharge him. The trustees' basic argument with regard to the eligibility requirements is that plaintiff failed to meet the alleged requirement of having "rendered service in accordance with reasonable standards." This language is contained in both plans within the definition of "Service." Both plans define service in part as,

> "* * * the last continuous period of employment by the Bank; provided, however, that—

(1) Service shall be determined in accordance with reasonable standards and policies adopted by the Bank * * *."

From an examination of both plans, it is clear that under the plans the term "Service" was intended to refer only to length of employment and not to quality of work rendered. Adoption of the trustees' reasoning would lead to the absurd conclusion that plaintiff had not rendered any service to the Bank during his more than 20 years of work there. In addition, the trustees' answer to plaintiff's complaint makes no mention of "standards" but rather relies upon the allegation that plaintiff was dismissed for cause; and the trustees never relied upon plaintiff's failure to observe standards in their evidence or instructions. Finally, to adopt the trustees' contentions would alter the express statement in the profit sharing plan that an employee dismissed for cause forfeits his rights and would substitute therefor a provision that cause alone is sufficient to work a forfeiture. For all of these reasons, we conclude that the evidence was sufficient to show that plaintiff met the eligibility requirements of the plans.

■■ We turn lastly to defendants' final contentions. Defendants argue that it was error to refuse two of their tendered instructions. The first of these tendered instructions provided that "a party may not benefit from fraudulent conduct," defined the term "fraud" and stated that it was for the jury to decide what acts constitute fraud. The second provided that, in determining whether plaintiff was an employee regularly employed within the meaning of the plans, the jury could consider whether or not plaintiff had discharged his implied agreement to serve his employer honestly and faithfully. These instructions were properly refused. Since plaintiff's rights under the plans must, as we have held above, be determined solely with reference to the provisions of the plans, in view of these provisions the two tendered instructions were irrelevant to the issues involved.

■■ Defendants also argue "* * * the construction of the Plans was a matter of law for the Court and it was error to submit them to the jury." If by this statement, defendants are contending that it was error to submit the documents themselves to the jury, section 67(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 67(4)) is pertinent. That section provides:

"Papers read or received in evidence, other than depositions, may be carried from the bar by the jury."

Here, the plans were admitted into evidence without objection. The trial judge has considerable discretion as to the exhibits which may be taken into the jury room (*Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364, 254 N.E.2d 826) and the submission of the plans in this case was not an abuse of this discretion. If, on the other hand, defendants are

arguing that the trial court erred in submitting the *construction* of the plans to the jury, as argued in their post-trial motion, then we find this contention unsupported by the record. An examination of the instructions given to the jury discloses that the jury was charged with determining certain factual issues and not with construing the plans themselves.

Accordingly, the judgment appealed from is affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.