JOHN A. STEVENSON, Plaintiff-Appellant and Cross-Appellee, *v.* ITT HARPER, INC., *et al.*, Defendants-Appellees and Cross-Appellants.

First District (1st Division) No. 76-1296

Opinion filed July 26, 1977.

Charles E. Mallon, Francis H. Monek, and Charles F. Meyers, all of Chicago, for appellant.

Nolan, O'Malley and Dunne, of Chicago (Henry J. McDonald, Robert J. Nolan, and Robert Emmett Nolan, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

John A. Stevenson (plaintiff) brought a declaratory judgment action against International Telephone and Telegraph Corp. (ITT) and its wholly owned subsidiary ITT Harper, Inc. Plaintiff sought compensatory and punitive damages in connection with termination of his employment by ITT Harper. Upon a stipulation of facts and after hearing testimony, the trial court, sitting without a jury, found that plaintiff had no cause of action under a pension plan agreement and awarded plaintiff five months' salary for his services as vice president of ITT Harper, less the sums plaintiff had earned while employed elsewhere during that period, and also awarded plaintiff an executive incentive bonus including interest thereon from January 1, 1972, to the date of judgment. The court denied punitive damages for an alleged inducement of a breach of plaintiff's contract. Plaintiff has appealed and each defendant has filed a cross appeal.

In this court, plaintiff contends that the pension plan agreement was ambiguous and should be construed to permit him to recover the present value of future benefits; the trial court improperly offset the salary paid to plaintiff by a third party during the remainder of plaintiff's term as vice president of ITT Harper and ITT was liable for tortious interference with plaintiff's contract with ITT Harper. Defendant ITT Harper responds that under the unambiguous terms of the pension agreement plaintiff could recover no benefits and the trial court properly reduced plaintiff's salary claim by earnings from outside sources. Defendant ITT maintains that plaintiff's discharge was an exercise of sound business judgment and

therefore no tortious interference with contract rights was proved. In its cross-appeal, ITT Harper argues that the trial court erred in awarding plaintiff his salary as vice president and his executive incentive bonus plus interest. Plaintiff answers that the salary and bonus were proper allowances for breach of contract and that interest on the bonus was properly awarded.

Plaintiff began employment with H. M. Harper Co. in 1952. He signed an employment application including the words: "I understand and agree that my employment is for no definite period and may * * * be terminated at any time without any previous notice." Plaintiff, apparently an able executive, held a series of managerial positions with the company until 1963 when the board of directors elected him to a one-year term as vice president. He was reelected to this position each succeeding year, through the election of May 27, 1971.

In December 1963, the H. M. Harper board of directors adopted a resolution directing that $2500 be set aside to create a deferred compensation fund for plaintiff and another employee under a plan to be formulated in the near future. On December 15, 1964, a board resolution authorized the company president either to pay these employees $2500 each "or to enter into a pension agreement" for each of them. A witness who had been corporate secretary in 1964 testified that when presented with the choice, plaintiff elected to receive the pension agreement instead of the cash payment.

On December 28, 1964, plaintiff and the H. M. Harper president signed a "Memorandum of Agreement" (hereinafter "the 1964 agreement") which recited that plaintiff had performed efficient service to the company; that the company desired to retain plaintiff's services and further desired to compensate him for his "past and future services * * * by providing a pension, payable after his retirement, which pension is to be above and beyond his current salary * * *." The document provided: "In the event Stevenson [plaintiff] shall continue in the employ of the Company until the later of his sixty-fifth birthday or his retirement, then the Company agrees to pay to Stevenson an annual pension * * *" according to a prescribed formula based on average salary and years of service. Provision was also made for payment of a portion of the pension to plaintiff's widow provided that the company would have no duty to make payments if plaintiff died prior to retirement.

Plaintiff was also a member of the H. M. Harper Employees' Savings and Profit Sharing Trust Fund which began before 1964 and continued through plaintiff's discharge in 1971. This fund is not involved in the instant case. Separate from the 1964 agreement, the profit sharing fund included employee contributions. After his employment with ITT Harper ended in 1971, plaintiff received a lump sum distribution of $36,959.06

from this profit sharing plan of which $14,221.11 was his net contribution.

Plaintiff testified that, in 1966 or 1967, he received at least three employment offers from other companies. He declined these offers because, as he testified, "I felt very comfortable where I was."

On March 2, 1971, the shareholders of the H. M. Harper Co. approved an agreement under which H. M. Harper merged into ITT Harper, Inc., a wholly owned subsidiary of ITT. Under the terms of the merger, the surviving corporation succeeded to all "liabilities, and obligations of [H. M.] Harper * * *." The parties have not disputed that ITT Harper is bound by the 1964 agreement.

Scott Harrod, the president and a member of the board of directors of H. M. Harper and ITT Harper from 1966 to 1972, testified that in 1970 and 1971, H. M. Harper sales and profits declined substantially. In response to adverse business conditions, the witness closed down the corporate acquisitions division of ITT Harper and stopped hiring new employees. He determined that plaintiff should be terminated because his function in corporate acquisitions had been taken over by the parent corporation (ITT) which "already had an acquisition function for the entire system." The witness then notified other officials of ITT Harper and ITT concerning this decision. Harrod met with plaintiff in late July 1971 and informed him that his position would be ended at the end of the year for the reasons described above.

On December 9, 1971, plaintiff sent a letter to ITT Harper containing an "offer to retire as of December 31, 1971" and stating that plaintiff expected to begin receiving payments under the 1964 agreement. The letter also stated, "This is in no way to be construed as a resignation * * *. If you do not * * * pay me my retirement benefits * * * now, then I am holding myself ready, willing and able to perform my duties as an employee * * *." In response, Harrod wrote to plaintiff that the matter was in the hands of the parties' attorneys and that plaintiff's salary would be discontinued on December 31, 1971.

This appeal and cross-appeal raise a number of distinct issues which will be separately considered. Additional facts will be stated as required in each instance.

### The Pension Agreement of 1964

■■ Plaintiff argues that the 1964 agreement provided for deferred compensation and, by seven years of service thereunder, he acquired a right to be paid the present value of the post-retirement payments. We cannot agree. As a general matter, the rights of the parties to a private pension agreement should be determined by the provisions of the plan. *Lamphere v. Old Second National Bank of Aurora* (1976), 39 Ill. App. 3d 610, 612-13, 350 N.E.2d 272, *leave to appeal denied* (1976), 63 Ill. 2d 557;

*Anger v. Bender* (1975), 31 Ill. App. 3d 877, 880, 335 N.E.2d 122, and cases there cited.

The agreement before us initially recites the employer's desire to retain plaintiff's services and to compensate him "for his past and future services to the Company by providing a pension payable after his retirement, which pension is to be above and beyond his current salary * * *." The agreement then states: "In the event Stevenson shall continue in the employ of the Company until the later of his sixty-fifth birthday or his retirement, then the Company agrees to pay to Stevenson an annual pension * * *."

By this language, the duty of the company to pay pension benefits is expressly conditioned upon plaintiff's continued employment, at least until age 65. We find no language in this agreement by which the company agreed to pay any amounts if the employment relationship were terminated before plaintiff reached retirement age. The parties specified no date for the vesting of any pension right other than the later of plaintiff's 65th birthday and his retirement. Further, the agreement makes no provision for the vesting of partial pension benefits in the event plaintiff's employment terminated prior to retirement and attainment of age 65. The fact that the parties intended to condition plaintiff's right to pension payments upon his continued employment until the later of the two specified events is also shown by the provision that plaintiff's widow would receive nothing if plaintiff died prior to retirement but would be eligible for benefits if plaintiff died after retiring from H. M. Harper and attainment of age 65.

In sum, the agreement contains no undertaking by the employer to retain plaintiff's services until age 65 or for any other period. Termination of the employment relationship was and remained the exclusive privilege of the employer precisely as plaintiff retained the concurrent right to leave the company.

We conclude from plaintiff's original application for employment and from this entire record that there was never in the relationship between plaintiff and his employer a specified time or duration for plaintiff's employment. In such a situation the legal relationship between the parties was an employment at will. The employment arrangement was thus subject to termination at will with or without cause by plaintiff or by his employer. (*Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 610, 323 N.E.2d 582, and cases there cited. See also *Kepper v. School Directors* (1975), 26 Ill. App. 3d 372, 374-75, 325 N.E.2d 91.) We do not find any language within the entire 1964 agreement which either expressly or by necessary implication modifies the employment relationship between these parties. We will consider the separate issue of plaintiff's rights as an elected officer of ITT Harper later in this opinion.

Furthermore, the agreement of 1964 contains no covenant to pay anything in the event of plaintiff's discharge prior to retirement. It includes no covenant by the company to set aside or segregate funds as they were earned for later payment. Further, if the compensation were actually accrued as plaintiff continued to be employed, the agreement would not have denied payment in the event of plaintiff's death before age 65 or retirement. The entire agreement does not otherwise mention deferred compensation.

Plaintiff argues that the agreement is ambiguous and should be construed against the draftsman's successor, ITT Harper. We do not dispute the abstract validity of this rule of construction nor of the principle that a pension agreement should be construed in favor of the employee. (See, *e.g. Anger v. Bender* (1975), 31 Ill. App. 3d 877, 880.) However, our analysis of the language of the agreement convinces us that no rules of construction need be applied. The agreement is clear and unambiguous so that construction thereof is neither necessary nor proper. (*Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 577, 594, 342 N.E.2d 65, *leave to appeal denied* (1976), 63 Ill. 2d 552. See also the cases cited in *Terracom Dev. Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 365 N.E.2d 1028.) As the above authorities demonstrate, determination of whether an agreement is ambiguous is a matter of law. In our opinion, the trial judge correctly ruled that the agreement had "a plain meaning" and was therefore unambiguous. It has been repeatedly held that a court will not add covenants to a contract simply to reach a more equitable result when the contract is an unambiguous expression of the entire agreement between the parties. *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 689, 355 N.E.2d 43. See also *Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, 1058, 358 N.E.2d 1244; *Sigma Delta Tau Society v. Alongi* (1976), 44 Ill. App. 3d 650, 652, 358 N.E.2d 906.

It is correct, as plaintiff urges, that every contract necessarily includes as a matter of law covenants that contractual duties of the parties will be performed in good faith. (See *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 51, 360 N.E.2d 551, and authorities there cited.) This principle does not aid plaintiff because the record does not suggest that plaintiff's termination was a bad faith effort by ITT Harper to avoid its conditional duty to pay pension benefits. On the contrary, the decision to discharge plaintiff appears to have been based on sound business reasons.

Plaintiff also contends that his performance in reliance on the 1964 agreement supports relief under an estoppel theory. An essential element of estoppel is a detrimental change in position in reliance on the promise in question. (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill.

App. 3d 449, 461-62, 323 N.E.2d 521, *leave to appeal denied* (1975), 58 Ill. 2d 596, and cases there cited.) In the case before us, plaintiff testified that he rejected three job offers in 1966 or 1967. There is no proof, however, that these actions were in reliance on the 1964 agreement. Plaintiff testified that he did not accept any of these offers because he "felt very comfortable where [he] * * * was." Whatever security resulted from the 1964 agreement concerning payment of future pension benefits must be viewed as a less material factor in plaintiff's actions in light of the evidence that from 1964 to 1971, as above shown, plaintiff participated in a profit sharing program from which he received a distribution of over $36,000 in 1972. Of this sum, only $14,221.11 represented plaintiff's net contribution.

The cases cited by plaintiff do not support his position. In *Garner v. Girard Trust Bank* (1971), 442 Pa. 166, 275 A.2d 359, an employee was denied recovery of vested pension benefits under an additional provision of the plan directing that such payments be forfeited if the employee competed. *Levitt v. Billy Penn Corp.* (1971), 219 Pa. Super. 499, 283 A.2d 873, unlike the instant case, involved construction of an ambiguous pension plan containing extensive provisions for benefits in event of termination by the company prior to retirement. As we have noted, the agreement before us is silent on the question of plaintiff's right to payment in the event of such termination. The remaining decisions relied on, *Jacoby v. Grays Harbor Chair & Manufacturing Co.* (1970), 77 Wash. 2d 911, 468 P.2d 666, *Cantor v. Berkshire Life Insurance Co.* (1960), 171 Ohio St. 405, 171 N.E.2d 518, *Matthews v. Swift & Co.* (5th Cir. 1972), 465 F.2d 814, highlight the principle that an employee's rights to benefits depend upon the vesting and qualification provisions of the plan. Since the writing before us excludes vesting or other benefits prior to the later of retirement and age 65, these cases do not assist plaintiff.

We note plaintiff's additional contention that the 1964 agreement was initially funded by his contribution because he elected to accept the agreement in lieu of a promised cash payment of $2500. This argument is based on the incorrect premise that the distinction between plans wholly funded by an employer and those including employee contributions is significant in this appeal. The distinction does not affect our analysis of the rights and duties of the parties under the pension agreement; thus we need not reach the merits of this contention.

The ruling of the trial court denying plaintiff recovery upon the pension agreement of 1964 is affirmed.

### *Plaintiff's Salary as Vice President*

■■ On May 27, 1971, the directors of ITT Harper elected plaintiff vice president of the corporation to serve until the next annual meeting of

the board. The corporate bylaws provided that each officer would hold his office until he "shall have been removed in the manner hereinafter provided." The bylaw governing "Removal" stated that officers were to be removed by the board of directors. The parties do not dispute that plaintiff was not effectively dismissed by the directors until May 25, 1972, five months after he left ITT Harper. Plaintiff received no communication from the board of directors informing him that he had been removed from office. The parties stipulated that to the knowledge of the directors of ITT Harper, no resolution was passed during 1971 removing plaintiff as vice president. Defendant ITT Harper, as cross-appellant, contends that the trial court incorrectly awarded plaintiff his unpaid salary as vice president for the period from January 1, 1972, to May 25, 1972, in the amount of $14,166.65. Defendant asserts that plaintiff's right to any salary for his one-year term as vice president was dependent on a duty to communicate with the board of directors following the oral notice of dismissal given him by Scott Harrod in late July 1971, effective at the end of 1971. In our opinion, the law of Illinois supports the action of the trial court in finding that plaintiff should recover his unpaid salary for the balance of his term of office; from January through May 1972.

In support of its position, defendant ITT Harper, cites *Ginter v. Heco Envelope Co.* (1925), 316 Ill. 183, 147 N.E. 42. Upon careful study of that decision, we conclude that it does not support the theory of this defendant but by strong implication supports the result reached by the trial court. In *Ginter*, the directors of defendant corporation elected plaintiff vice president for a one-year term commencing January 5. In May that year the president of the company terminated Ginter's services. The corporate bylaws, as in the case at bar, provided that an officer could be dismissed at any time by the directors. The supreme court held that the power to remove an officer was vested in the directors, the president had no legal power to dismiss Ginter and the attempted termination was a nullity. (316 Ill. 183, 187.) However, the court pointed out that the evidence showed, regarding Ginter, "[i]nstead of making it known that he was ready and willing to discharge his duties he departed and never returned. He should have informed the directors of his willingness to continue in their service notwithstanding * * *" the attempt of the president to dismiss him. (316 Ill. 183, 187-88.) The court held that having failed in that duty Ginter was not entitled to recover any portion of his salary. In other words, the court took the position that Ginter had no reasonable basis for concluding that his attempts further to perform his duties as vice president would have been prevented by the corporation and thus would have been fruitless.

In the case before us, as in *Ginter*, Harrod's purported discharge of plaintiff as an employee had no legal relationship to the bylaws governing

his tenure of office as vice president. (*Cf. Talton v. Behncke* (N.D. Ill. 1952), 106 F. Supp. 157, 162, *rev'd on other grounds* (7th Cir. 1952), 199 F.2d 471.) However, unlike *Ginter*, the record before us contains evidence that plaintiff continued to make his services available to the company after being notified of his dismissal by Harrod. On December 9, 1971, plaintiff's letter to ITT Harper stated his offer to resign, conditioned on the company's agreement to pay retirement benefits. The letter indicated: "If you do not see fit to pay me my * * * benefits * * *, I am holding myself ready, willing and able to perform my duties * * *." The responding letter from Harrod clearly stated that plaintiff's salary "will be discontinued as of December 31, 1971."

In view of this communication from a member of the board of directors who was president of the company, plaintiff was wholly justified in his conclusion that further performance of his employment contract and of his duties as vice president as well, would not be permitted after December 31. His duty under *Ginter* was thus fully discharged. In our view, plaintiff's performance of his services as vice president for the remainder of his term was effectively prevented by the plain language of Harrod's letter. The trial court properly held plaintiff entitled to the unpaid portion of his salary for the balance of his one-year term of office as vice president.

### Reduction of Damages
### By Outside Earnings

■■ After plaintiff's termination he formed a corporation of which he was president and sole shareholder. Plaintiff borrowed $195,000 on his own credit for use in this business and, including this sum, invested $275,000 in the corporation. During 1972 the new corporation lost $46,450. Plaintiff received salary of $26,500 for that year. The trial court deducted from damages awarded to plaintiff the sum of $8000 as the amount of salary from this new corporation paid to plaintiff from February through May 1972. Plaintiff urges that since the corporation was formed primarily with funds for which he incurred a personal obligation and since the corporation lost more than $46,000 in 1972, the salary was simply a payment made by plaintiff to himself from his own funds.

It is a generally accepted theory of law that a corporation is a legal entity entirely distinct from its shareholders. Even a "sole stockholder is not the owner of the corporate property." (*Loy v. Booth* (1974), 16 Ill. App. 3d 1077, 1080, 307 N.E.2d 414, *appeal denied* (1974), 56 Ill. 2d 582, and authorities there cited.) Plaintiff's position cannot be upheld because "one who has created a corporate entity will not be permitted to disregard it to gain an advantage which under it would be lost. [Citation.]" *Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 993, 339 N.E.2d 299.

In the instant case, plaintiff as sole shareholder was no longer the owner of the sums used to fund the corporation. Plaintiff cannot be permitted to embrace the advantage of the corporate form and then to avoid the necessary legal effect of this action. The salary plaintiff received from the new corporation, in law a separate entity, was properly deducted from the damages he was otherwise entitled to recover. (See *Kelly v. Chicago Park District* (1951), 409 Ill. 91, 98, 98 N.E.2d 738.) Thus, the theory of avoidable consequences was properly applied here and the trial court was correct in deducting plaintiff's earnings of $8000 from the damages allowed. *Cf. Hill v. Bell Discount Corp.* (1963), 39 Ill. App. 2d 426, 429, 188 N.E.2d 517, *appeal denied* (1963), 27 Ill. 2d 625.

## Executive Incentive Bonus
## and Prejudgment Interest

■■ In its cross-appeal, ITT Harper asserts that the trial court erred in finding that plaintiff was entitled to a bonus of $4500 for 1971. In 1969 H. M. Harper established an Executive Incentive Bonus which remained in effect during 1971, after the merger. By its terms, this bonus plan applied to officers and employees in management positions divided into two groups according to salary levels. Bonus payments were dependent on the operation of a formula weighing such factors as the company's net worth, net income and return on net worth. The document also stated: "The bonus plan shall be established subject to annual review at the start of each calendar year by the * * * Directors * * *. However, the plan shall not be changed or discontinued during a bonus year * * *." Plaintiff was paid an executive bonus pursuant to this plan in 1969 and 1970.

The sole argument advanced against the decision of the trial court is that, since the record is silent on all the facts necessary to apply the formula, plaintiff has not established a right to any payment under the plan. This argument overlooks evidence which convinces us that the judgment below is supported in the record. No changes in the plan were enacted by the H. M. Harper directors in January 1971. At the end of the year, after the merger, other executives in plaintiff's bonus group were paid bonuses under the plan by ITT Harper. It is undisputed that plaintiff's employment with ITT Harper continued during the whole of 1971 and he was paid his salary for that year. Further, Donald Underwood, vice president of ITT Harper, earned virtually the same salary as plaintiff in 1971 and was paid a bonus of $4500, the amount awarded plaintiff by the trial court.

Defendant ITT Harper, advances no legal reason and cites no authority for its position that this ruling of the trial court was improper. We see no legal issue raised by this record concerning payment of this bonus to plaintiff. In our opinion, plaintiff was entitled to this bonus particularly in view of the fact that it is undisputed that his employment with ITT

Harper continued during all of 1971. This result would appear by necessary implication from the recent decision in *Bartels v. Denler* (1975), 30 Ill. App. 3d 499, 333 N.E.2d 640.

Similarly, we find no factual reason to disturb the result reached by the trial court. In *Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 342 N.E.2d 758, the issue was whether the amount of damages found by the trial court was supported by the record. There, as in the case before us, the issue was factual and no countervailing evidence had been offered by the defendant. We reached the result that we could not say that the amount awarded by the trial court was manifestly against the weight of the evidence. (35 Ill. App. 3d 845, 852, citing *Reese v. Melahn* (1973), 53 Ill. 2d 508, 512-13, 292 N.E.2d 375.) We will add that our review of the record in the instant case and our consideration of the undisputed facts convinces us that the result reached by the trial court is justified by the evidence and it is accordingly affirmed.

### Award of Interest Upon Bonus

Defendant ITT Harper urges, without citation of authority, that the trial court should not have allowed interest on the bonus because no contract or statute has been shown by plaintiff as "authority for this penalty." We agree that an award of prejudgment interest on the bonus is not supported by law.

"Absent an express agreement between the parties, allowance of [prejudgment] interest depends upon statutory authority. [Citation.]" (*Hamilton*, 35 Ill. App. 3d 845, 852.) Under section 2 of the Illinois Interest Act, interest is allowable "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing * * *." (Ill. Rev. Stat. 1975, ch. 74, par. 2.) In *Hamilton*, we concluded that a written offer which had not been accepted "did not itself create a liability to pay on an indebtedness" and could not be the subject of prejudgment interest. (35 Ill. App. 3d 845, 852.) However, the situation in the instant case is closer to *John Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 1023, 339 N.E.2d 529, involving a building contract, and *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 251, 323 N.E.2d 73, concerning a written agreement for sale of securities. In both cases the court held the documents to be "instruments of writing" under the Interest Act. In the present case, the written bonus plan became a contract once plaintiff had continued in employment for the entire bonus year.

Even though this bonus contract, under the foregoing authorities might thus be considered an instrument of writing, prejudgment interest is not proper here because of the additional requirement that the creditor

"prove that the money due was a liquidated amount or subject to easy computation." *John Kubinski & Sons, Inc.*, 33 Ill. App. 3d 1015, 1023, and cases there cited.

Upon careful examination of the bonus plan, we conclude that the complex formula for calculating the amount of the bonus fund and the share of each participant therein is not subject to easy computation. For example, included in the formula is an assessment of "consolidated net income" which is to be "computed in accordance with the method customarily employed by the auditors of the Company." This and other terms in the plan could readily be subject to dispute. The plan as a whole does not permit the "easy computation" of plaintiff's bonus and thus the bonus cannot be considered a liquidated amount sufficient to invoke the Interest Act.

In addition, the phrase "money withheld by an unreasonable and vexatious delay of payment" (Ill. Rev. Stat. 1975, ch. 74, par. 2) also authorizing an interest award, is not, in our opinion, applicable here. Plaintiff urges that payment of the bonus was refused simply because he had retained legal counsel. This contention is not supported by the record. The testimony by Scott Harrod was simply that because plaintiff had retained an attorney the witness felt that he should not make the decision of payment of plaintiff's bonus alone and that he therefore sought review of the matter by other company officials. The interposition of a defense in legal proceedings is not sufficient to constitute vexatious delay " 'which approximates actual fraud.' " *Hamilton*, 35 Ill. App. 3d 845, 853, quoting *Kespohl v. Northern Trust Co.* (1970), 131 Ill. App. 2d 188, 191, 266 N.E.2d 371.

It follows that we also reject plaintiff's contention that the interest award was justified as an exercise of the court's equitable powers. The record lacks proof of fraud, bad faith or other questionable circumstances in the nonpayment of the bonus. We are convinced that equitable considerations do not require the allowance of interest on these facts. (Compare *Galler v. Galler* (1975), 61 Ill. 2d 464, 336 N.E.2d 886; *Cooper v. Brogni* (1964), 50 Ill. App. 2d 70, 199 N.E.2d 619.) The allowance of prejudgment interest upon plaintiff's bonus is accordingly reversed.

### Tortious Interference with Contract

■■ Plaintiff's complaint as amended seeks damages from ITT for wrongfully inducing a breach of the pension agreement. The elements of the tort of interference with contractual relationships are: "(1) The existence of a valid and enforceable contract, (2) The defendants knowledge of the existing contract, (3) Intentional and malicious inducement of the breach, (4) The subsequent breach by the third person due to defendant's wrongful conduct, and (5) Damage to the plaintiff.

[Citations.]" *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 897, 275 N.E.2d 429.

In our opinion, the record here is not sufficient to show tortious interference with the pension agreement of 1964 by the parent corporation, ITT. The record contains evidence that defendant ITT was closely involved in an advisory capacity in the operations of ITT Harper. However, the decision to discharge plaintiff is not shown to have been the product of a malicious directive from ITT to Scott Harrod, the president of ITT Harper. On the contrary, the testimony of Harrod was that he made the decision following his own analysis of the needs of ITT Harper and the business climate at the time and then communicated this decision to ITT headquarters and officials of ITT Harper.

Even assuming that ITT had purely of its own volition ordered that plaintiff be dismissed, no liability would be justified. The sole basis for plaintiff's discharge shown here was a sound business reason. As above stated, plaintiff's primary duties had been in the area of corporate acquisitions. After the merger, the acquisition function relevant to the subsidiary corporation was to be assumed by ITT. Plaintiff does not question the business judgment behind this concentration of function.

■■ Therefore, the record is clear that ITT's influence, if any, on the initial determination to discharge plaintiff was motivated by reasonable business purposes and was the product of neither malice nor bad faith. We accordingly affirm the trial court's finding that ITT was not liable for tortious inducement of breach of contract. See *H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 474, 322 N.E.2d 45.

To summarize the result reached, we affirm denial of recovery to plaintiff upon the pension agreement of 1964; affirm allowance to plaintiff of unpaid salary of $14,166.65 as vice president; affirm reduction of this amount by plaintiff's outside earnings of $8000 (resulting in a net recovery by plaintiff of $6166.65); affirm allowance of plaintiff's incentive bonus of $4500; reverse award of prejudgment interest upon the bonus and affirm denial of plaintiff's claim for damages for tortious interference with plaintiff's contractual rights. Insofar as the judgment order awards plaintiff $11,027.22, it is thus modified to award plaintiff $10,666.65 and as thus modified, the judgment appealed from is affirmed.

Judgment modified and affirmed.

McGLOON and WILSON, JJ., concur.