**Robert ZICK, Plaintiff,**

v.

**VERSON ALLSTEEL PRESS CO., Defendant.**

No. 85 C 6598.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1985.

Richard J. Puchalski, Doss, Puchalski, Keenan & Bargiel, Chicago, Ill., for plaintiff.

Robert Zielinski, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Robert Zick ("Zick") sues Verson Allsteel Press Co. ("Verson"), alleging Verson terminated his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (Count I) and—as a pendent claim—in breach of an implied contractual covenant of good faith and fair dealing under Illinois law (Count II). Verson now moves under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss Count II and under Rule 11 for sanctions. For the reasons stated in this memorandum opinion and order, Verson's motion is granted in both respects.

### Facts [1]

For purposes of this opinion, the relevant facts are few. Zick was hired by Verson in 1956.[2] After twenty-eight years as a Verson employee, Zick (then fifty-six years old) was fired July 27, 1984. Zick makes no allegation he had an express employment contract, nor does he allege Verson ever specifically undertook not to fire him except for cause.

### "Good Faith and Fair Dealing"

■ Verson principally contends Zick was an "at will" employee whom it could fire at any time "for any reason, or none at all." *Martin v. Federal Life Insurance Co.*, 109 Ill.App.3d 596, 600, 65 Ill.Dec. 143, 147, 440 N.E.2d 998, 1002 (1st Dist.1982). Zick does not dispute his at-will status, but he argues an at-will employment contract, like all contracts in Illinois, incorporates an implied covenant of good faith and fair dealing (the "Implied Covenant"). That Implied Covenant, in Zick's view, imposes "a substantive limitation on the employer's right to discharge" (Zick Mem. 4).

Before this opinion addresses the argument as Zick presents it, the Rule 11 issue makes it worthwhile to note arguments he expressly does not present:

1. Zick's claim is purely contractual. He does not assert the tort of retaliatory discharge.

2. He does not allege any express promise of job security or permanent employment, nor does he allege he and Verson bargained over such promises. See *Martin*, 109 Ill.App.3d at 600–03, 65 Ill. Dec. at 147–49, 440 N.E.2d at 1002–04 (discussing requirement of specific bargaining to rebut presumption employment contract is at will).

3. He does not claim the Implied Covenant is to be implied-in-fact from his course of dealing with Verson.

4. He makes no quasi contractual or quantum meruit claim.

In short, Zick argues the Implied Covenant is a part of his at-will employment contract "as a matter of law" (Zick Mem. 5), essentially as a compulsory term. See *Restatement (Second) of Contracts 2d ("Restatement")* § 205 (1979):

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

---

1. Familiar Rule 12(b)(6) principles require this Court to accept as true the Complaint's well-pleaded factual allegations, drawing all reasonable inferences in Zick's favor. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). In any event the current motion raises no factual disputes.

2. Neither Verson's business nor Zick's job description appears in the record.

As a general principle of contract construction, the Restatement position is of course unexceptionable. See *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 286, 154 N.E.2d 683, 690 (1958); *Bonner v. Westbound Records, Inc.*, 76 Ill.App.3d 736, 744–45, 31 Ill.Dec. 926, 932–33, 394 N.E.2d 1303, 1309–10 (1st Dist.1979). But Zick's interpretation of the scope of the good-faith-and-fair-dealing doctrine is totally awry. That requirement is not an enforceable legal duty to be nice or to behave decently in a general way. Instead the phrase "good faith" is more a term of art, having a number of meanings as used in contract law (*Restatement* § 205 comment a):

1. Good faith is an obligation to refrain from acts or omissions tending to defeat the justified and reasonable expectations of the parties to a contract. *Id.; Corbin on Contracts* § 654 D, at 804 (Kaufman supp. 1984 pt. 1).

2. Good faith is a tool for interpreting contractual provisions. It "comes into play in defining and modifying duties which grow out of specific contract terms and obligations. It is a derivative principle." *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1289 (N.D.Ill.1983). As *Martindell*, 15 Ill.2d at 286, 154 N.E.2d at 690 observed:

[W]here an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted.

3. Finally, good faith has been construed as an obligation to refrain from certain types of conduct "because they violate community standards of decency, fairness or reasonableness." *Restatement* § 205 comment a. But this is a limited and discretely-bounded public-policy exception, prohibiting acts not expressly breaches of the terms of a contract yet offensive to the community. See, e.g., *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 132–33, 52 Ill.Dec. 13, 16–17, 421 N.E.2d 876, 879–80 (1981) (against public policy to discharge at-will employee for reporting potentially criminal activity of fellow-employee to law-enforcement authorities); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 181–82, 23 Ill.Dec. 559, 563–64, 384 N.E.2d 353, 357–58 (1978) (same where at-will employee is fired for applying for statutory workers' compensation).[3]

None of those concepts of "good faith" applies to the Implied Covenant as Zick asserts it. As to the last-described meaning of the term, Zick does not articulate a public-policy rationale comparable to that expressed in *Palmateer* and *Kelsay*.[4] As to the second, there are no ex-

---

**3.** Both *Palmateer* and *Kelsay* characterized the employees' actions as sounding in the tort of "retaliatory discharge." Zick expressly states his action is on the contract and not in tort, and he does not rely on those cases. Thus he urges a general obligation, present in *all* employment-at-will contracts, not to fire an employee without just cause. Clearly that is at war with the universal rule, and it finds no support in the limited exception articulated in *Palmateer* and *Kelsay*.

**4.** Indeed, he could not do so. Zick Mem. 4 argues he was fired so Verson could avoid its obligation to pay increased pension benefits. But the public-policy rationale has been extended only to policies established by statute (*Kelsay*) or constitutional principles (*Palmateer*). Where discharge was for the purpose of avoiding a benefit the employer was not obligated by law to provide, the *Kelsay-Palmateer* approach is inapplicable. Contrast *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 510, 92 Ill.Dec. 561,

566, 485 N.E.2d 372, 377 (1985) (finding retaliatory discharge actionable where at-will employee refused to operate equipment not meeting federally mandated safety codes relating to radioactive materials) with *Price v. Carmack Datsun, Inc.*, 109 Ill.2d 65, 68, 92 Ill.Dec. 548, 550, 485 N.E.2d 359, 361 (1985) (finding nonactionable a retaliatory discharge of at-will employee for filing a claim under employer's group health insurance plan). See also *Powers v. Delnor Hospital*, 135 Ill.App.3d 317, 322–23, 90 Ill. Dec. 168, 172, 481 N.E.2d 968, 972 (2d Dist. 1985):

[T]he employer's lying to an employee and in its internal records is not against any clearly mandated public policy. It may be that as a matter of private morality and out of respect for its employees as people an employer should be truthful when it gives reasons for terminating an employee. However, these are personal matters and not the subject of public policies.

press contractual terms in need of interpretation or clarification. And as to the first (and perhaps most important) of the meanings of "good faith," discharge whenever and for whatever reason an employer chooses is a basic component of an at-will contract. Thus that sort of discharge cannot logically be said to contradict or frustrate the reasonable and justifiable expectations of the employee.[5] As Judge Hart of this District Court observed in a case much like Zick's (*Gordon,* 562 F.Supp. at 1290):

> Since Gordon was an at will employee, the duty to deal in good faith was appended to nothing which had independent life. Therefore no cause of action predicated only on the good faith principle may stand....

True enough, courts in some other jurisdictions have adopted a broader role for the concept of good faith in at-will employment contracts. See, e.g., the landmark case of *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549, 551 (1974) (employer may not terminate an at-will employee if motivated by bad faith or malice). What those courts have really done is essentially to abolish the at-will contract as it has been known at common law.

Zick in essence asks this Court to follow the path cleared by *Monge,* a move this Court has already declined to take because it *cannot* do so. See *Scott v. Sears, Roebuck & Co.,* 605 F.Supp. 1047, 1052–53 (N.D.Ill.1985):

> Despite her admitted at-will employee status, Scott claims Illinois law implies a

covenant of good faith and fair dealing that limits the circumstances under which Sears could discharge her. But that is not the law in Illinois.

That last sentence is really the crucial stumbling block Zick cannot overcome. According to well-established principles of federal jurisprudence, this Court must apply state law to a pendent state-law claim. Just as in diversity cases, federal courts do not participate in the evolution of state law.[6] In diversity and pendent jurisdiction cases, federal jurisprudence is rubber-stamp jurisprudence.[7]

Zick's case is not even a close call. As the cases already cited demonstrate, Illinois courts have shown no inclination whatever to back away from the traditional at-will rule. Nothing could be clearer than the statement made in *Criscione,* 66 Ill.App.3d at 669–70, 23 Ill.Dec. at 459, 384 N.E.2d at 95 (quoting *Loucks v. Star City Glass Co.,* 551 F.2d 745, 747 (7th Cir.1977)):

> Furthermore, requiring an employer in an at will relationship to terminate an employee only for a legitimate business reason absent any other restrictions by contract or statute would place the courts in the untenable position of having to assess an employer's business judgment. There has been no attempt by the legislature to so alter the State's employment policy and such a step is not one for the courts to make. The rule in this state is that an employment at will relationship can be terminated for "a good reason, a bad reason, or no reason at all."

---

**5.** Of course, the employee in an at-will contract has the option to walk off the job at any time. Thus at-will contracts are said—even though social or economic reality may be otherwise—to embody "mutuality of obligation." *Criscione v. Sears, Roebuck & Co.,* 66 Ill.App.3d 664, 669, 23 Ill.Dec. 455, 459, 384 N.E.2d 91, 95 (1st Dist. 1978).

**6.** That *Erie v. Tompkins* notion is now approaching the half-century mark—almost exactly half as old as the *Swift v. Tyson* doctrine when *Erie* supplanted *Swift.* In constitutional terms, *Swift* and not *Erie* is really responsive to the Supremacy Clause, see 2 W.W. Crosskey, *Politics and the Constitution in the History of the*

*United States,* ch. xxiii–xxvi (1953) and the cases cited in n. 11 of this opinion. However, responsible jurisprudence precludes this Court from being more than a voice crying in the wilderness on that subject.

**7.** There are mixed views among federal judges as to the degree of latitude they possess in the absence of an authoritative recent statement by the state supreme court; see the exchange of views culminating (and cited) in this Court's opinion in *Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. 193, 196–200 (N.D.Ill. 1983). None of those views, however, would help Zick here.

Only last May the Illinois Supreme Court forcefully reaffirmed that Illinois rule in *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 525, 88 Ill.Dec. 628, 633, 478 N.E.2d 1354, 1356 (1985):

> Contrary to plaintiffs' assertion, however, this court has not, by its *Palmateer* and *Kelsay* decisions, "rejected a narrow interpretation of the retaliatory discharge tort" and does not "strongly support" the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy.

Zick tries to invoke a dictum in *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 991, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1st Dist.1984) (citations omitted):

> In describing the nature of that limitation [imposed by the doctrine of good faith performance] the courts of this state have held that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.... Where a party acts with improper motive, be it a desire to extricate himself from a contractual obligation by refusing to bring about a condition precedent or a desire to deprive an employee of reasonably anticipated benefits through termination, that party is exercising contractual discretion in a manner

inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith.

But the key to that *Dayan* statement is the phrase "the reasonable expectations of the parties" (an echo of the *Restatement* and Corbin). If an employee has an at-will contract, the only reasonable expectation created by that contract is that he or she can be terminated for "a good reason, a bad reason, or no reason at all." Absent a showing of some separate express or implied undertaking by the employer, the fact the at-will employee has put in many years' service with the employer does not give rise to any presumption of tenure. *Barr, Palmateer, Kelsay, Wheeler* and *Price* overwhelmingly illustrate the Illinois principle that "bad faith" in the at-will context must amount to a clear breach of articulated public policy, not merely the deprivation of non-vested accrued pension or retirement rights. See *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 572, 9 Ill. Dec. 304, 309, 366 N.E.2d 561, 566 (1st Dist.1977) (where pension agreement provides for no vesting until age 65, no promise to alter employee's at-will status is presumed).[8]

In summary, Zick's argument is addressed to the wrong forum. This Court cannot take Illinois law into uncharted waters, and the purported map Zick tenders is a hoax, leading to no buried treasure. Count II must be and is dismissed.[9]

### Sanctions

■ Verson has also moved for an award of sanctions under Rule 11:

> pension benefits is in bad faith, *Stevenson* nowhere supplies authority for that implication. Most significantly, any such implication runs contrary to the more recent and definitive pronouncements by the Illinois Supreme Court, culminating in *Barr* and *Price*.

---

**8.** Zick appears to rely on *Stevenson*, 51 Ill. App.3d at 573, 9 Ill.Dec. at 310, 366 N.E.2d at 567 (citations omitted):

> It is correct, as plaintiff urges, that every contract necessarily includes as a matter of law covenants that contractual duties of the parties will be performed in good faith.... This principle does not aid plaintiff because the record does not suggest that plaintiff's termination was a bad faith effort by ITT Harper to avoid its conditional duty to pay pension benefits. On the contrary, the decision to discharge plaintiff appears to have been based on sound business reasons.

Though that language might perhaps be read to imply a discharge solely to avoid vesting of

**9.** Verson has also argued even if Zick's theory of the Implied Covenant were correct, all state-law causes of action relating to employment discrimination are preempted by the Illinois Human Rights Act, Ill.Rev.Stat. ch. 68, ¶¶ 1–101 to 9–102. In light of the just-completed discussion in this entire section, it is unnecessary to reach that question.

The signature of an attorney [on a motion] constitutes a certificate by him that he has read the motion[,] ... that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a ... motion ... is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party ... the amount of the reasonable expenses incurred because of the filing of the ... motion[,] ... including a reasonable attorney's fee.

Rule 11's standard is not subjective. Its test is not what the signing attorney believed was warranted, but what "a competent attorney" would reasonably believe "after reasonable inquiry." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985) (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985) ).

*Eastway, id.*, in observing Rule 11 does not contemplate sanctions based on an attorney's subjective bad faith, stated sanctions must be awarded where a competent attorney after reasonable inquiry must say a claim "was destined to fail." [10]  See also *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) (even Rule 11's "good faith" standard for proposed change in existing law is objective).  In Zick's case that test is not difficult to apply.  Zick's attempt to milk current precedents for support is wholly unavailing: After *Barr* (which Zick does not attempt to distinguish) any argument based on "existing law" was "destined to fail" in this Court.  Indeed, nothing has intervened since this Court's ruling in *Scott* to hint that decision was incorrect when rendered or is now.

Further, though in an Illinois state court Zick might perhaps have had a "good faith argument for the extension, modification, or reversal of existing law," any argument of that type was also doomed to failure *in this Court*.  As this opinion has already pointed out, the firmly-entrenched canon is that this federal court is bound to follow—not lead—state-court jurisprudence.[11]  Ar-

---

10. On that score Zick's appeal to *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1164–65 (7th Cir.1983), affirming this Court's July 21, 1982 decision, No. 79 C 2122, is unavailing. *Badillo* canvassed standards of attorneys' fees awards to a prevailing employment discrimination defendant under 42 U.S.C. §§ 2000e–5(k) and 1988.  It held the complaint of a pro-se litigant who relied on the EEOC's determination of reasonable cause was not "frivolous" under the test of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).  It would be hard to imagine a less parallel set of facts.  And to the extent *Badillo, id.* at 1165 discussed the imposition of sanctions "under the general equitable powers of the court to impose sanctions for 'bad faith' conduct," it applied a test of *subjective* bad faith that does not apply to Rule 11 as amended in 1983. *Indianapolis Colts* simply reflected our Court of Appeals' adherence to principles previously announced by many other courts (including this one) under the more stringent 1983 amendment to Rule 11.  All the cases agree Rule 11 does not require an actual bad motive to trigger sanctions—that is, subjective bad faith is a sufficient,

but not a necessary, condition for Rule 11 sanctions.

11. Though this Court has (as earlier in this opinion) frequently expressed its disagreement as a jurisprudential matter with the *Erie* doctrine, in the course of expressing that disagreement it has necessarily frequently observed that doctrine must be followed by the lower federal courts.  Zick would have done well to have read this Court's observation in *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 504 F.Supp. 636, 642 (N.D.Ill.1980) (footnote omitted):

One of the many flaws in the *Erie v. Tompkins* doctrine is that it places the federal courts not on a parity with the state courts in diversity cases (as its proponents claim), but rather makes them subordinate.  If a lower state court regards a decision of its higher court as outmoded or too broad, it may reach a different decision and leave review to a higher court.  That luxury is not permitted to the federal court, which must slavishly follow the state precedent.

See also *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 148–49 n. 2 (N.D.Ill.1981) (dis-

guments that might have persuaded an Illinois court (though given the posture and recency of the Illinois cases, even that possibility is highly remote at best) simply cannot be accepted here. Zick has unsuccessfully argued the dicta in the Illinois cases to or beyond their absolute limit, and his bootless effort has only proved that by any objective standard, Count II was "destined to fail."[12] Compare *Textor v. Board of Regents of Northern Illinois University*, 87 F.R.D. 751, 754 (N.D.Ill.1980) (discussing, in the context of the earlier and less strict version of Rule 11, the appropriate assertion of a claim the law ought to be changed).

### Conclusion

Verson's motion to strike Count II of the Complaint and for sanctions under Rule 11 is granted (the sanctions are imposed on Zick's counsel with no right to reimbursement from Zick, absent a showing that would justify sanctioning the client for the choice of legal arguments advanced on his behalf). To minimize (or even avoid) the need for an evidentiary hearing (with its potential for "fees on fees"), this Court urges counsel to seek agreement in as many areas as possible on the relevant factors (such as time spent, hourly rates and so on). Thereupon Verson should submit a modified fees petition, together with a statement of the issues upon which the parties are agreed and those on which they have disagreed. This Court will establish the procedures appropriate to carry on from that point.

cussing and agreeing with Professor Crosskey's views on *Erie*); *Abbott Laboratories*, 573 F.Supp. at 200 (federal judiciary "imprisoned by what we might view as the state law's inadequacies or injustices").

12. Zick responds in part that Rule 8(e)(2) allows for pleading in the alternative. That response is of course wholly irrelevant. Rule 8(e)(2) states (emphasis added):

> When two or more statements are made in the alternative and one of them if made *independently would be sufficient,* the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. · A party may also state as many separate claims ... as he has regardless of consistency.... *All statements shall be made subject to the obligations set forth in Rule 11.*

That last sentence shows Zick's Rule 8(e)(2) defense to Verson's motion for sanctions is perhaps even more certainly destined to fail than his Count II claim. Certainly a party may plead alternative—even contradictory—legal theories.

But each theory pleaded must individually withstand Rule 11 scrutiny, and Zick's state law claim does not. This Court need not now decide whether to subscribe to the recent dictum in *Martinez, Inc. v. H. Landau & Co.,* 107 F.R.D. 775 (N.D.Ind.1985), for the situation there was critically different from this one. There the court declined to invoke Rule 11 sanctions on the theory that two of four *arguments* advanced in support of a motion to dismiss were without basis in law (though the court ultimately held the arguments were tenable anyway). Under the assumed circumstances the court held it must look to the merits of the motion as a whole and not pick off particular arguments within it as a basis for Rule 11 sanctions. That concept appears at odds with both the language of, and the rationale for, the 1983 amendment to Rule 11. But in light of the express wording of Rule 8(e)(2)—and in light of the fact Zick's Count II is a discrete claim advancing a legal theory wholly separate from the Count I ADEA claim—the *Martinez* dictum (if sustainable in any case) is inapplicable here in any event.