William P. BUTLER, Plaintiff,

v.

**SENTRY INSURANCE A MUTUAL COMPANY, Defendant.**

**No. 85 C 10466.**

United States District Court,
N.D. Illinois, E.D.

July 11, 1986.

On Motion for Reconsideration
July 31, 1986.

Cornelius P. Callahan, Thomas L. Hogan, Chicago, Ill., for plaintiff.

John W. Lally, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William Butler ("Butler") brings this diversity-of-citizenship action against Sentry Insurance A Mutual Company ("Sentry"),[1]

**1.** Sentry's proper name is a matter of some confusion. Both "Sentry Life Insurance Company" and "Sentry Insurance A Mutual Company" appear on that firm's documents furnished to this Court. Sentry's own counsel refers to its client as "Sentry Insurance Company." Neither side attributes any significance to those nomenclatural differences.

**2.** Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* —— U.S. ——, 106

claiming entitlement to health benefits under Sentry's Group Policy No. 90–13493–43 (the "Policy"). Now Sentry has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, the motion is granted.

### Facts [2]

Sentry is a Wisconsin-incorporated and Wisconsin-based insurance company (¶ 2). In 1977 Sentry issued the Policy to First National Bank of Minneapolis, Trustee of the Phi Delta Phi Insurance Trust ("Trust") (Policy Application at 1). Agents of Sentry and Trust signed the Policy Application in Minnesota (*id.*). Butler (an Illinois citizen and resident) is an insured person under the Policy (¶¶ 1, 5).

Between December 1982 and May 1983 Butler received treatment for alcoholism at Little Hill-Alina Lodge ("Little Hill") (¶ 6; Butler A. ¶ 4). Little Hill is a licensed "alcoholism rehabilitation facility" (Butler A. ¶¶ 2, 3).

After his discharge from Little Hill Butler submitted a loss claim to Sentry. That claim was refused (¶ 6) because treatment at alcoholism rehabilitation facilities is excluded from Policy coverage (Policy at 3):

"Hospital" wherever used in the policy means an establishment which ... is not primarily a clinic, nursing, rest or convalescent home or similar establishment and is not other than incidentally, a place for alcoholics or drug addicts.

### Butler's Theory

Butler does not (and cannot) contend the Policy on its face covers his Little Hill treatment. Instead he seeks to link one

S.Ct. 2548, 2552–53, 90 L.Ed.2d —— (1986)). For that purpose this Court must view the evidence in the light most favorable to the nonmovant—in this case Butler (*Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2513–14, 90 L.Ed.2d —— (1986)). Citations to matters asserted in the Second Amended Complaint (the "Complaint") and admitted in Sentry's Answer will simply take the form "¶ —," following the Complaint's paragraphing. Party admissions on file will be cited "Butler A. ¶ —" and "Sentry A. ¶ —."

policy provision to a network of statutes in a manner requiring Sentry to provide him with such coverage despite the Policy exclusion:

　　1.　Policy Uniform Provision ¶ 15 reads:

　　TERMS OF POLICY CONFORMED TO STATUTE. Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform with such statutes.[3]

　　2.　Minn.Stat. § 62A.04, subd. 7 ("Subdivision 7")[4] provides:

　　**Reciprocal provisions; foreign insurer.** Any policy of a foreign or alien insurer, when delivered or issued for delivery to any person in this state, may contain any provision which is not less favorable to the insured or the beneficiary than the provisions of sections 62A.01 to 62A.09 hereof, and which is prescribed or required by the law of the state under which the insurer is organized.

　　3.　Emphasizing Subdivision 7's last clause, Butler says the Policy must include provisions "required by" Wisconsin law, for Sentry is "organized" in that state. And Wis.Stat. § 632.89(2) ("Section 632.89(2)") provides in part:

　　(a) *Scope.* Each group disability policy, joint contract or contract providing hospital treatment coverage shall include coverage for:

　　1.　Inpatient hospital treatment of mental and nervous disorders, alcoholism and drug abuse.

In turn Wis.Stat. § 632.89(1)(b) defines "hospital" to include alcoholism treatment facilities.

Thus Butler would have it the confluence of the Policy, Subdivision 7 and Section 632.89(2) mandates coverage for his Little Hill treatment. Neither side has turned up any case law supporting or negating that analysis, nor has this Court's independent research disclosed any. Nevertheless a commonsense reading of the statutes shows Butler's Tinker-to-Evers-to-Chance combination fails to make the play.

### Statutory Analysis

While no statement of purpose accompanies Subdivision 7, its intent is clear enough. For the protection of its residents and the affirmative advancement of certain social policies, each state imposes various requirements on insurers desiring to sell insurance to the state's residents. One such frequently-dealt-with social policy is the treatment of alcoholism. Thus, for example, Wisconsin has seen fit to require insurers to include alcoholism-treatment coverage when they write health-insurance policies on Wisconsin residents (see Wis. Stat. § 631.01(1)).

Insurers are of course not limited to single-state operations. Not surprisingly, then, states that have made such policy judgments often extend them to foreign insurers that issue policies covering the states' residents as well as to domestic insurers under their direct control. That is what Subdivision 7 does for Minnesota: It says foreign insurers' policy terms cannot be less favorable to Minnesota residents[5]

---

**3.** [Footnote by this Court] Butler Mem. 1 purports to quote a "Paragraph 15" with a different caption ("CONFORMITY WITH STATE STATUTES") and somewhat different language—one of the differences being its reference to policy-provision conflicts with statutes of the state where the Policy is "delivered or issued for delivery." Having fine-tooth-combed the Policy, this Court has not found the language Butler sets out, and the language quoted in the text of this opinion is obviously the relevant paragraph. In any case the linguistic difference is of no consequence to disposition of Sentry's motion, as the later text will explain.

**4.** See Appendix.

**5.** Butler has glossed over a critical clause in Subdivision 7—that defining its provisions as ·applicable to foreign insurers' policies "when delivered or issued for delivery to any person in this state...." Normal English usage tells us that means:

　　1.　policies delivered to Minnesota residents and

　　2.　policies issued to others (an insured such as Trust might perhaps be one example) for delivery to Minnesota residents.

Nothing in the Minnesota statute suggests "person" applies to nonnatural persons, nor does anything indicate any concern of the Minnesota legislature for out-of-state persons such as Illi-

than Minn.Stat. §§ 62A.01 to 62A.09 would require of Minnesota insurers.[6]

■ That of course is the correct reading of Subdivision 7. It imposes no requirement that a foreign insurer must offer Minnesota residents all terms mandatory under the foreign state's laws. Subdivision 7 is written in conjunctive and permissive ("may," not "shall") terms. It says policies issued by foreign insurers and delivered in Minnesota:

1. *may* contain any provision required by the foreign insurer's own state's laws,

2. so long as such provisions are at least as favorable as certain Minnesota laws require of Minnesota insurers.

In other words, the statutory structure is that if Wisconsin law required Wisconsin insurers to include a provision less favorable to an insured than the comparable Minnesota provision (say a shorter period for furnishing proof of loss), a Wisconsin insurer could not include that provision when delivering policies to Minnesota persons. Instead the insurer must use the more favorable Minnesota version as a floor.

Butler's argument stands that on its head. He says Minnesota requires Sentry to offer a policy *more favorable* than Minnesota law would require. After all, nothing in Minn.Stat. §§ 62A.01 to 62A.09 (the provisions foreign insurers must at least match) requires coverage for alcoholism treatment.[7]

■ In any case Wisconsin's own law does not require Wisconsin insurers to provide alcoholism coverage to everyone. That coverage is required only when the policy is delivered or issued for delivery in Wisconsin (not true here) or when the insured is a Wisconsin resident (also not true here)—see Wis.Stat. § 631.01(1), which imposes those limits on the applicability of all of Wis.Stat. ch. 632. Thus even if Minnesota law did require Sentry to include all forms of coverage Wisconsin law requires (as it does not), Wisconsin law itself does not require alcoholism treatment coverage in policies not written for Wisconsin residents. Sentry need not provide such coverage to Butler.[8]

nois citizen Butler. Even so, however, statutes frequently have broader coverage than the legislative intent would require—for example, a foreign insurer issuing a policy to a group including residents of a number of states could end up having to give most-favored-nation treatment to everyone covered by the policy. Accordingly the analysis cannot simply stop once the Minnesota legislative purpose has been identified as indifferent to Illinoisans.

6. Another rationale for provisions like Subdivision 7 is the protection of domestic insurance companies. Every mandatory coverage provision has its actuarial cost to the insurer. If out-of-state insurers could come in-state with policies made cheaper by the absence of the required terms, they would have an advantage over domestic companies. Requiring foreign companies to include coverage not less favorable than the mandatory terms puts them on no better than an even footing with the domestics. Though that might seem to run afoul of the "dormant" Commerce Clause, the McCarran-Ferguson Act (15 U.S.C. § 1012) carves out a broad exception for state insurance regulation.

7. Minn.Stat. § 62A.149 does require insurers issuing policies in Minnesota to include alcohol-

ism-treatment coverage. But that really cuts against (rather than for) Butler for two reasons:

1. Subdivision 7 requires foreign insurers to match only the Minn.Stat. *§ 62A.01 to 62A.09* requirements. Thus Minnesota's alcoholism statute cannot be brought in under Subdivision 7's aegis.

2. Minnesota's alcoholism statute applies of its own force to all policies "issued or delivered in Minnesota...." But notably it requires alcoholism-treatment coverage only for "any Minnesota resident entitled to coverage...." Thus even if Subdivision 7 applied *to Butler by virtue of the Policy's Minnesota* issuance to Trust (but see n. 5), Minn.Stat. § 62A.149 plainly does not protect him as a non-Minnesota resident.

8. Butler has offered nothing to suggest his *Illinois* citizenship might give rise to policy-payment rights. Whether or not that is a promising approach (a matter as to which this Court expresses no opinion) it is now foreclosed to him. If Illinois law provided an avenue of relief here, that is surely something Butler could have discovered at the same time he researched Minnesota and Wisconsin law. He has had his day in court on the current motion (see Appendix).

## Conclusion

There are no issues of material fact, and Sentry is entitled to a judgment as a matter of law. This action is dismissed.

## APPENDIX

Butler has attempted to take an impermissible stance on the present motion. His Requests for Admission include a request that Sentry admit:

3. That said policy of insurance states the policy was issued by the Defendant with headquarters located in Stevens Point, Wisconsin.

Sentry A. ¶ 3 responds:

3. It admits that defendant has its home office at Stevens Point, Wisconsin; to the extent that this admission implies that the policy was issued in Wisconsin, rather than Minnesota, it denies the allegations of paragraph 3.

Sentry has, in short, said Minnesota was the state of issuance.

In that context, Butler Mem. 1 seeks to precede its legal analysis with an attempted hedge:

Plaintiff, without waiving its right to contend that the law other than that of the State of Minnesota may apply and assuming *arguendo* that Defendant's assertion that the law of Minnesota does apply, states as follows:

But that flouts the entire concept of a summary judgment motion. Summary judgment is a substitute for trial—more accurately, a determination that no trial (in the sense of an evidentiary hearing) is needed because the absence of genuine issues of material fact permits a final disposition on principles of law alone. *Anderson,* — U.S. at ——, 106 S.Ct. at 2511–12.

Just as a party who has gone through a full-blown trial and has lost that trial cannot advance evidence that should have been, but was not, offered at the trial, so a party cannot hold back legal arguments on the opponent's summary judgment motion until (having lost the motion) the party must make a motion to reconsider. *American Floral Services, Inc. v. Florists' Transworld Delivery Association,* 633 F.Supp. 201, 224–25 (N.D.Ill.1986) and cases there cited. This Court must reject Butler's effort at a mere arguendo assumption, with its implication that Butler can shift gears if Sentry wins its motion (as it now has).

It is therefore irrelevant that the question of where an insurance policy is deemed to have been issued may sometimes be a difficult one. Sentry A. ¶ 3 is of course consistent with the fact that agents of both Sentry and Trust signed the documents in Minnesota, and Butler is at this point bound to the proposition the Policy was "issued" there.

## ON MOTION FOR RECONSIDERATION

This Court's July 11, 1986 memorandum opinion and order (the "Opinion")[1] granted Sentry's summary-judgment motion, dismissing this action in its entirety.[2] Now Butler has moved under Fed.R.Civ.P. ("Rule") 59(e) for reconsideration of that dismissal. For the reasons stated in this memorandum opinion and order, the motion (in the sense it asks a different result) is denied.

Sentry is based in, and incorporated under the laws of, Wisconsin. Sentry issued the Policy to Trust in Minnesota. Butler (an Illinois citizen and resident) is a Policy-covered person. There is no dispute that Butler claims Policy coverage for treatment at an "alcoholism treatment center," nor is there any dispute that the Policy's literal terms exclude coverage for alcoholism-treatment-center care. Butler's argument for coverage (as presented in his memorandum in opposition to Sentry's

---

1. This opinion will assume familiarity with the factual statement and most of the defined terms used in the Opinion.

2. On July 15, 1986 this Court issued a supplement to the Opinion (1) granting Butler leave to file his Second Amended Complaint and (2) reaffirming the Opinion's result. Butler's present motion is addressed only to the Opinion.

summary-judgment motion and as summarized in Opinion at 808) was:

1. Policy Uniform Provision ¶ 15 [3] operated to amend the Policy to conform to Minnesota law, for the Policy was issued there.

2. Minnesota law requires Sentry to include all policy provisions that are (a) required by Wisconsin law (because Sentry is organized there) and (b) not less favorable to Butler than the provisions of Minn.Stat. §§ 62A.01 to 62A.09.

3. Wisconsin law requires health-insurance policies to cover alcoholism-treatment-center care.

4. Therefore Sentry is required to provide Butler with the coverage he seeks.

As the Opinion explained, Butler's reasoning was wrong at two of those steps:

1. Minn.Stat. § 62A.04 subd. 7 ("Subdivision 7"), quoted Opinion at 808, does not require Sentry to include all Wisconsin mandatory provisions. Contrary to Butler's argument (reasserted in his current Mem. 3), Subdivision 7 is not written in mandatory terms. It says foreign insurers issuing policies in Minnesota *"may"* contain provisions required by the insurer's state of organization, so long as they are not less favorable to the insured person or persons than the parallel Minnesota statutory requirement (see Opinion at 809).[4] Further, Opinion at 808 n. 5 pointed out the fact Subdivision 7 in terms does not apply to Butler at all, for he is not a Minnesota resident.

2. Wisconsin does not in any case require alcoholism-treatment-center coverage in all policies issued by a Wisconsin insurer. Wis.Stat. § 631.01(1) limits the applicability of that required coverage to policies issued (a) for delivery in Wisconsin or (b) to Wisconsin residents (see Opinion at 809).

That disposed of the argument Butler actually made. But in its own research this Court discovered and cited (Opinion at 809 n. 7)—as a possible adding string to *Butler's* bow, not *Sentry's*—Minn.Stat. § 62A.149 ("Section 62A.149"), which says all policies (1) issued or delivered in Minnesota (2) to any Minnesota resident must contain alcoholism-treatment-center coverage. That provision thus operates independently of Subdivision 7, but as Opinion at 809 n. 7 pointed out, Butler is not a Minnesota resident, so the version of Section 62A.149 this Court had located does not help him either. Thus the statutory provision this Court discussed as a possible aid to Butler (who had already lost on his own arguments) turned out to be a straw man, or actually to cut against Butler.

---

**3.** Opinion at 808 n. 3 pointed out the ¶ 15 language as quoted by Butler's original Mem. 1 was entirely different from (though it had the same meaning as) the ¶ 15 language contained in the copy of the Policy furnished to this Court. Butler's current Mem. 4 now explains the language he previously quoted was drawn from Butler's Certificate of Insurance (though Butler offers no explanation as to why he did not provide this Court with the Certificate as part of his submissions on the summary-judgment motion, or as to why his summary-judgment Mem. 1 referred to the Certificate language as what "Defendant's *policy* sets out in Paragraph *15*" (emphasis added)—the Certificate language is *not* numbered "15" (or indeed anything), and Butler's whole submission on this point was needlessly misleading). Butler's present Mem. 4 also says the language difference is "significant." That is not at all the case, but in any event Butler offers no argument claiming to take advantage of the assertedly significant difference.

**4.** Butler Mem. 3 says if "may" as used in Subdivision 7 is read to mean precisely what that word does mean, the statute would be rendered "ineffective." That is certainly not so (though it means the statute is ineffective to help Butler, as it was obviously not intended to). As Opinion at 808 noted, insurers operate nationwide. Most states require the insertion of certain boilerplate language in policies issued (1) by insurers incorporated under their laws or (2) to their residents. Obviously it is simpler for an insurer to use one stock insurance form drafted to meet its own state's specifications than to draw up separate forms for each state in which it might issue a policy. Subdivision 7 makes that efficient business practice of foreign insurers legal, so long as the insurers' home-state-required provisions do not offer Minnesota insureds a worse deal than Minnesota law would require. That is why Subdivision 7 is written in permissive rather than mandatory form.

Butler has now tendered to this Court a copy of Section 62A.149 as it read in 1977, the effective date of Butler's coverage. At that time the statute said (in relevant part) (Butler Mem.App. 4):

No policy or plan of insurance regulated under Chapter 62A ... shall be delivered, issued, executed or renewed in this state ... unless the policy plan or contract specifically includes and provides health service benefits to any subscriber or other person covered thereunder, on the same basis as other benefits, for the treatment of alcoholism, chemical dependency or drug addiction in

(1) a licensed hospital,

(2) a residential treatment program as licensed by the State of Minnesota pursuant to diagnosis or recommendation by a doctor of medicine,

(3) a non-residential treatment program approved or licensed by the State of Minnesota.

True enough, that earlier version of Section 62A.149 did not limit its applicability to Minnesota residents, so long as the policy was issued (as here) in Minnesota. But before Butler can properly claim the benefit of that earlier version of Section 62A.149 he must clear at least two hurdles, and he falls at both.

■ First, Butler has in typical fashion tossed a statute at this Court without at all explaining why he is entitled to claim rights under it. Little Hill is not a "licensed hospital." Nor, in view of its New Jersey location, is there any reason to draw any pro-Butler inference Little Hill was or is "licensed by the State of Minnesota." Certainly this Court cannot simply assume that—and Butler has made no effort to establish the unlikely fact that Little Hill was or is so licensed. That being so, even Section 62A.149's earlier version does not apply to Butler's case.

■ Second, as Opinion at 809 n. 8 and its Appendix observed, it is now too late for Butler to make arguments based on legal theories and supporting facts he could have advanced during the summary-judgment briefing process. This Court—not Butler— uncovered Section 62A.149 after a brief glance through Minnesota's insurance laws. Arguments based on that statute (in any relevant version) were available for Butler to make. He did not make them, and the Opinion looked to the now-in-force version of Section 62A.149 only as a possible basis for assisting Butler—but one that on examination turned out to support the already-arrived-at conclusion Butler was wrong on his own terms, his own arguments. Once Sentry moved for summary judgment Butler was required to give the matter his best shot (*American Floral Services, Inc. v. Florists' Transworld Delivery Association*, 633 F.Supp. 201, 224–25 (N.D.Ill.1986) and cases there cited). He is not now entitled to reload and shoot again—at least not with ammunition that was available to him during the original fusillade.

That same problem fatally infects Butler's current attempt to invoke Illinois law. Opinion at 809 n. 8 warned him such an attempt now would be bootless, and it is. Butler's effort to put onto Sentry the onus of his own failure to have dealt earlier with the relevant statutes (see his Mem. 5) is not only misguided: It is disingenuous as well.

■ Finally, Butler's appeal to policy principles carries no freight. No doubt the various statutes he now cites express a general public-policy interest in alcoholism treatment. But it is always dangerous to extrapolate policy beyond the terms in which the governing statutes express that policy. And it is certainly impermissible for a federal court exercising diversity jurisdiction to attempt to expand in common-law fashion the express statutory limits of state law. See *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 932–33 (N.D.Ill. 1985).

## Conclusion

Butler's motion offers no basis for reconsidering the Opinion's dismissal of this action. It is denied, and the Opinion is reaffirmed.