**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**Audrey SEDITA, et al., Defendants.**

No. 87 C 2790.

United States District Court,
N.D. Illinois, E.D.

March 18, 1993.

Dana R. Hutter, E.E.O.C., Chicago, IL, for plaintiff.

Frances H. Krasnow, Tracy L. Potter, K. Clark Schirle, Neal, Gerber & Eisenberg, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

This matter is before the court on defendants' motion to reconsider the court's January 31, 1991 opinion ("January opinion) granting partial summary judgment in favor of plaintiff, the Equal Employment Opportunity Commission ("EEOC"). For the reasons explained below, the motion to reconsid-

er is granted, and the court vacates summary judgment in plaintiff's favor.

### Background

The pertinent facts are as follows. Defendant, Audrey Sedita ("Sedita"), is the President and sole shareholder in defendant clubs, Women's Workout World ("WWW"). WWW consists of approximately fifteen health clubs which have an exclusively female membership. The majority of the clubs employ one Manager, one Assistant Manager, and approximately fifteen to twenty Instructors.[1] Defendants do not employ men in any of the enumerated positions because they claim that the essence of these positions involves a substantial amount of intimate physical contact with members, and exposure to nudity and partial nudity in the showers, locker rooms, and exercise rooms.[2] Although a few men have been hired to work as Class Givers, defendants conclude that employing males as Managers, Assistant Managers, and Instructors would violate club members' legitimate privacy interests.[3]

The parties filed cross motions for partial summary judgment in November 1989 and January 1990, concerning whether gender is a Bona Fide Occupational Qualification ("BFOQ") for the Manager, Assistant Manager, and Instructor positions.[4] The court denied both motions in its October 22, 1990 opinion ("October opinion"). *U.S. EEOC v. Sedita*, No. 87 C 2790, slip op., 1990 WL 165304 (N.D.Ill. October 22, 1990). However, the court commented on the paucity of the record and invited additional briefing on whether the alleged "intimate" touching implicated a legitimate privacy interest. *Sedita*, No. 87 C 2790, slip op. at 9.[5]

Subsequently, the EEOC moved the court to reconsider its October opinion. Plaintiff argued that it was entitled to partial summary judgment because defendants had failed to demonstrate all elements of the BFOQ defense on which they have the burden of proof. In its January 31, 1991 opinion ("January opinion"), the court granted reconsideration and entered partial summary judgment in favor of the EEOC. *U.S. EEOC v. Sedita*, 755 F.Supp. 808 (N.D.Ill.1991). In so doing, the court emphasized that defendants' signed petition and Sedita's deposition testimony was inadequate to show a factual basis for believing that men could not be employed, and that defendants' blanket rejection of various alternatives to sex-based hiring was improper. *Sedita*, 755 F.Supp. 808, 811–12 (N.D.Ill.1991).

### The Motion to Reconsider

Defendants ask the court to reconsider its January opinion based upon additional evidence in support of their BFOQ defense. Defendants also argue that reconsideration is appropriate because the summary judgment standards previously applied by the court were unduly harsh. However, plaintiff insists that the general rule in this circuit is that the courts will not allow the parties to present new evidence or new legal arguments, which could have been presented before. *See e.g., Publishers Resource, Inc. v. Walker–Davis Publications*, 762 F.2d 557, 561 (7th Cir.1985) (Motions to reconsider should not be used to introduce new evidence that could have been adduced during the pendency of the summary judgment motion); *Butler v. Sentry Ins. A Mut. Co.*, 640 F.Supp. 806, 812 (N.D.Ill.1986). After much deliberation, and careful consideration of

---

1. Waukegan World, Inc., employs one Manager, one full-time Instructor and a number of part-time Instructors.

2. According to Sedita, the duties of Managers, Assistant Managers, and Instructors include membership solicitation (which entails giving tours of all club facilities), new member orientation sessions, taking club members' measurements, weight training, and teaching exercise classes.

3. Sedita states that a Class Giver's sole responsibility is to conduct exercise classes.

4. In addition to the sex discrimination charge, the original suit against the defendants also included a charge on behalf of two former employees of the club, alleging discrimination on the basis of pregnancy. The pregnancy discrimination claim settled.

5. At a status hearing held on November 1, 1990, the court struck the briefing schedule established in the October opinion, and gave the parties 90 days to complete additional discovery.

both parties' arguments, the court has decided to grant reconsideration.

■ ■ Although the court agrees with the general rule against reconsideration of new evidence, the unique facts of this case dictate that the court depart from it. In the instant case, defendants seek to introduce evidence which was discovered after the court ruled on, and denied, the parties' cross motions for summary judgment.[6] After the denial of the cross motions for partial summary judgment, both sides were free to conduct additional discovery in order to strengthen their cases. Thus, this is not a case in which the defendants' presentation of new evidence represents an attempt to undermine the court's ruling, or to gain a tactical advantage by delay. Rather, defendants were gathering the evidence at issue before the court ruled against them, and after the court had commented on the need for more evidence.[7]

Moreover, confusion regarding the presentation of the new evidence existed on many levels. Apparently, there was a misunderstanding concerning whether the defendants planned to submit supplemental evidence while the EEOC's motion for reconsideration was pending. Although, the court believed that the defendants planned to present any additional evidence they had on the motion for summary judgment at that time, defendants were under a contrary impression. In sum, the court finds that reconsideration is appropriate on the facts presented here.[8] Accordingly, the motion to reconsider is granted. Thus, the court will reconsider, under all of the evidence presented, whether the EEOC is entitled to summary judgment because defendants have failed to raised a genuine issue of material fact on each element of the BFOQ defense.

### Summary Judgment

■ Summary judgment is appropriate when the record shows that there is no genu-ine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must then set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts that must be resolved at trial. *Id.* at 324, 106 S.Ct. at 2553. The court must view all evidence in the light most favorable to the nonmoving party and draw all *reasonable* inferences in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). However, if "the evidence presented by the nonmovant ... [is] merely colorable or ... not significantly probative, summary judgment [is] proper." *Wolf*, 870 F.2d at 1330. Moreover, there can be no "genuine issue as to a material fact" where a party fails to make a showing sufficient to establish the existence of an element on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 252–53.

Since the EEOC does not bear the burden of proof on the BFOQ defense, its burden "may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Defendants must then make a showing sufficient to establish the existence of each element of the BFOQ defense. *Id.* at 323, 106 S.Ct. at 2552.

### Discussion

■ Title VII specifically prohibits employers from discriminating against potential employees on the basis of sex. Hence, sex

---

**6.** Defendants' new evidence consists of a petition signed by 9,200 club members, 13 affidavits of health club workers, and an affidavit from architect, Edmond Zisook, regarding the costs of structural changes.

**7.** The EEOC filed it's motion to reconsider on November 5, 1990, four days after the court granted the parties 90 days to complete additional discovery. The court then granted partial

summary judgment in the EEOC's favor on January 31, 1991.

**8.** Moreover, all of the cases cited by plaintiff acknowledge the fact that a motion to reconsider is soundly within the court's discretion. None of the authority cited convinces the court that it *cannot* reconsider its January opinion for the reasons stated.

based hiring policies may be justified only when sex is a BFOQ for the position at issue. Title VII defines a BFOQ as a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e–2(e)(1). "It is universally recognized that this exception to Title VII was 'meant to be an extremely narrow exception to the general prohibition of discrimination....'" *Torres v. Wisconsin Dep't of Health & Social Serv.*, 859 F.2d 1523 (7th Cir.1988) (quoting *Dothard v. Rawlinson*, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977)).[9]

■ An employer asserting a privacy based BFOQ defense must satisfy a three part test: the employer must establish that 1) there is a factual basis for believing that hiring any members of one sex would undermine the essence of its business, 2) the asserted privacy interest is entitled to protection under the law, and 3) no reasonable alternatives exist to protect the privacy interests other than the gender based hiring policy. *Sedita*, 755 F.Supp. at 810; *Norwood v. Dale Maintenance System, Inc.*, 590 F.Supp. 1410, 1415–16 (N.D.Ill.1984); *Fesel v. Masonic Home of Del., Inc.*, 447 F.Supp. 1346 (D.Del.1978), *aff'd*, 591 F.2d 1334 (3d Cir. 1979).[10]

■ In the instant case, defendants acknowledge that they have employed a hiring policy which discriminates against men on the basis of sex, and that such a policy can only be defended as a BFOQ. Defendants argue that their sex based hiring policy is a BFOQ because it is based on protecting the legitimate privacy interests of their exclusively female clientele. Moreover, defendants contend that protecting the privacy interests of WWW customers is crucial to the club's continued existence, since members will not patronize Women's Workout World if they are forced to be waited on by men. Defendants insist that there are no reasonable alternatives because it would be impossible for WWW to reassign job duties in order to avoid intruding on member's privacy interests, and that the costs of restructuring their facilities to accommodate men would be prohibitively high.

**Privacy Based BFOQ**

■ Having asserted a privacy based BFOQ, defendants' must show that there is a legitimate privacy interest associated with the jobs at issue. Defendant's argue that these jobs require a substantial amount of intimate touching, and exposure to nudity. Although it is not clear whether the EEOC concedes that exposure to nudity implicates a protectible privacy interest, various courts have found that it does. *See e.g., Norwood*, 590 F.Supp. 1410, 1416 (N.D.Ill.1984) (privacy based BFOQ barred employment of a female washroom attendant in office building).[11] Also, despite the fact that customer preferences do not usually establish a BFOQ, in some situations "[c]ustomer preference may ... give rise to a BFOQ for one sex where the preference is based upon a desire for sexual privacy." *EEOC v. Mercy Health Center*, 29 F.E.P.C. 159 (W.D.Okl.1982).

> To establish that sex is a BFOQ because of privacy considerations, a defendant must show a factual basis for believing that an intrusion on legitimate privacy interests is an essential part of the employee's job and that any alternative to a sex-based policy would undermine the central mission of the enterprise.

9. *See also International Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, ——, 111 S.Ct. 1196, 1204, 113 L.Ed.2d 158 (1991); EEOC Guidelines on Discrimination Because of Sex, 29 CFR § 1604 (1976) (noting that the bona fide occupational qualification as to sex should be narrowly interpreted).

10. *See also Hernandez v. University of St. Thomas*, 793 F.Supp. 214, 217 (D.Minn.1992). After reviewing the Supreme Court's discussion of safety based BFOQs in *International Union, UAW v. Johnson Controls*, the *Hernandez* court emphasized:

> The concept that alternatives are relevant to whether sex is a BFOQ when privacy is at stake remains valid, but the formulation of the appropriate test must reflect *Johnson Controls*.

11. Excluding cases involving prisoners, the situations where privacy rights have been recognized as a BFOQ involve occupations which require an employee to work with or around individuals whose bodies are exposed in varying degrees. *See e.g., Brooks v. ACF Industries, Inc.*, 537 F.Supp. 1122, 1132 (S.D.W.Va.1982) (Staff nurse in health care facility's labor and delivery area); *Fesel v. Masonic Home of Delaware, Inc.*, 447 F.Supp. 1346, 1352–54 (D.Del.1978) (nursing assistant in home for the elderly).

Thus, the privacy right has been recognized in a variety of situations, including disrobing, sleeping, or performing bodily functions in the presence of the opposite sex." *Id.* Consequently, defendants have articulated a legitimate privacy interest with regard to nudity.

However, the extent to which the privacy interest is implicated given the alleged "intimate" touching involved in this case is unclear. Defendants' evidence indicates that a significant part of defendants' business involves touching clients on their breasts, inner thighs, buttocks, and crotch area when taking measurements and instructing members on the use of equipment and proper exercise form. (Sedita Dep. Vol. I, p. 178; Memorandum in Support of Motion to Reconsider ("Def. Memo"), Ex. C). The EEOC questions the extent of the touching involved and argues that such touching fails to implicate a protectible privacy interest. (Plaintiff's Memorandum in Opposition to Defendants' motion to Reconsider ("Pl. Memo"), pp. 15–18).

While some of the cases which have considered privacy questions are instructive, *see e.g., Hodgson v. Robert Hall Clothes, Inc.,* 326 F.Supp. 1264, 1269 (D.Del.1971) (salesperson in clothing department allowed for sex based BFOQ); *Fesel v. Masonic Home of Delaware, Inc.,* 447 F.Supp. 1346, 1352–54 (D.Del.1978) (nursing assistant in home for the elderly), no court has addressed the issue of whether a protectible privacy interest exists with respect to the sort of touching at issue in this case. Also, as the EEOC correctly notes, the cases upon which defendants rely are clearly distinguishable because they involve exposure to nudity, touching of genitals, and observance of private bodily functions. (Pl. Memo, pp. 16–17). However, the court declines the invitation to find that members of a single-sex health club have no legitimate privacy interest in preventing the opposite sex from touching their breasts, buttocks, etc.—even for the limited purposes described here and for the purposes of this motion, the court will assume that defendants have implicated protectible privacy interests.

In reaching this decision, the court is particularly mindful of the court's comment in *Backus v. Baptist Medical Center,* 510 F.Supp. 1191, 1195 (E.D.Ark.1981):

It is necessary to stress that the purpose of the sex provisions of the Civil Rights Act is to eliminate sex discrimination in employment, not to make over the accepted mores and personal sensitivities of the American people in the more uninhibited image favored by any particular commission or court or commentator.

Since the court assumes that legitimate privacy interests have been implicated, it must determine whether the intrusion on privacy involves the "essence" of the jobs and the Club's business. Defendants have introduced evidence that the nudity and touching concern the essence of the jobs and the business operation. (Defendants' Affidavits, Def. Memo, Ex. C). Although the EEOC makes a valid argument that the essence of WWW is providing exercise classes, defendant's evidence allows a reasonable inference that the "essence" of WWW can be more broadly construed as providing personal and individual service to an exclusively female clientele. Thus, defendants have raised a genuine issue of material fact because the essence of the jobs and business might properly include: selling memberships, personally instructing clients on exercise form and use of equipment, leading orientation sessions, and taking clients' measurements. The court cannot say, as a matter of law, that the various job duties are not the essence of WWW's business. In short, construing the evidence in the light most favorable to the nonmovant, defendant's have shown that the essence of the jobs may implicate legitimate privacy interests.

### Factual Basis for Hiring Policy

This court must determine whether there is a factual basis for defendants' hiring policy. As the court in *Norwood* held:

A defendant in privacy rights case may satisfy its burden of proving a factual basis for a sex-based hiring policy by showing that the clients or guests of a particular business would not consent to service of the opposite sex, and that the clients or guests would stop patronizing the business if members of the opposite sex were allowed to perform the service.

*Norwood,* 590 F.Supp. at 1416. In making this determination, courts should consider

the defense in the context of the particular business before them. *Torres v. Wisconsin Dep't of Health and Social Services*, 859 F.2d 1523, 1528 (7th Cir.1988). Here, defendants operate a women's fitness center, which they claim focuses on personalized training, fitness, weight loss, and the particular needs of its older, overweight clientele.

Defendants have submitted petitions signed by over 10,000 club members, Sedita's deposition testimony, and over 13 affidavits of club management to show that there is a factual basis for their discriminatory hiring policy. The petition states:

> If Women's Workout World hires males as Instructors, Managers, Assistant Managers or in any other member-servicing capacity, I will no longer patronize Women's Workout World. I joined Women's Workout World to receive personalized exercise instruction and assistance without having my privacy rights violated. I would consider it an invasion of my privacy rights for a man to be present in a locker room, sauna, or shower area when I was nude or partially nude. Additionally, I would not participate in an exercise class or aerobics class which is taught by a male. I would also consider it an invasion of my privacy rights to have a male touch my bust or pelvic area or inner thighs while measuring me or when teaching me how to use equipment or do an exercise properly.

(Def. Memo, Ex. D). Additionally, Sedita's deposition testimony and the club managers' affidavits all state the belief that Women's Workout World would lose its members if men were employed in any member-servicing capacity. (Def. Memo, pp. 6–9; Ex. C). Although the court still questions the probative value of Sedita's evidence and the petition, when it is coupled with the corroborating affidavits of club managers, the court finds that these submissions create an inference that women will not patronize Women's Workout World if men are employed there as Instructors, Managers, or Assistant Managers. Thus, defendants have provided a factual basis for their belief that no men can be hired as Managers, Assistant Managers, and Instructors.

**Reasonable Alternatives**

The EEOC makes a number of suggestions, which it argues would enable the defendants to hire males and still maintain the essence of their business operation. These suggestions include hiring or allowing females to assist clients who object to being touched by males, posting a schedule to inform clients of when male employees would be on duty, or letting clients take themselves through the locker room.

Defendants contend that the club cannot reassign job duties in order to avoid intruding on members' privacy interests, since the conduct which infringes on privacy interests amounts to the essence of the jobs in question, and division of labor would threaten defendants' personal service goals. (Def. Memo, pp. 11–12) Defendants also make several cost-related arguments. First, they argue that it would be impossible for Women's Workout World to hire men for the stated positions because their customers would refuse to be served by men, and they would lose their members. (Petition, Def. Memo, Ex.D)

Additionally, defendants insist that hiring men for the clubs is not economically feasible because of the need to substantially restructure their exercise facilities by putting in bathroom facilities for men and doors on the locker room, etc. (Edmond Zisook Affidavit, Def. Memo, Ex. F). Although it is unclear that defendants would need to install separate bathroom facilities for men, the court finds that these cost concerns are relevant to the reasonableness of the suggested alternatives, and to the ultimate legitimacy of the BFOQ defense. *See e.g., Hernandez v. University of St. Thomas*, 793 F.Supp. 214, 217 (D.Minn.1992) (noting that both qualitative and quantitative results are a factor in the determining the essence of the business); *Norwood*, 590 F.Supp. at 1419 (questioning the degree of fundamental restructuring defendants had to undertake in order to avoid discriminatory hiring).

In sum, after extended consideration of the legitimate arguments of both parties, the court concludes that the issues raised here are more appropriately resolved after a trial on the merits. Specifically, the court will be

in a better position to determine the "essence" of the jobs and WWW's business after weighing conflicting evidence on the percent of time devoted to certain duties, and the significance placed upon those duties when employees are hired. The court will also be able to accord the proper weight to the petitions and affidavits after reviewing additional information on the hiring policies of other same sex clubs, and co-ed clubs. Additionally, it will be possible to weigh defendants' representations on member attrition, and the need for fundamental restructuring by evaluating the experiences of defendants' own clubs which have hired men as Class Givers in the past.

Further, determining the "reasonableness" of various alternatives is most properly done after a trial, so that the cost concerns, and other factors may be analyzed in light of Title VII's fundamental goal of eradicating employment discrimination. The court's conclusion is bolstered by it's extensive review of the authority in this area. Significantly, the court has only uncovered one case in which a privacy based BFOQ was resolved on summary judgment. *See Jennings v. New York State Office of Mental Health,* 786 F.Supp. 376 (S.D.N.Y.1992). In sum, the legal and factual complexities of the BFOQ, as evidenced by the record in this case, make it particularly difficult to resolve on a summary judgment motion. *See Hernandez v. University of St. Thomas,* 793 F.Supp. 214, 217 (D.Minn.1992) (noting that the BFOQ defense inherently raises factual issues). Taking all of these important factors into consideration, the court concludes that summary judgment is inappropriate here.

### Conclusion

For the foregoing reasons, defendants' motion to reconsider is granted, and the court vacates its January ruling granting summary judgment in plaintiff's favor. The court will not entertain additional summary judgment motions in this case.