**Richard GASCHLER, Plaintiff,**

v.

**SCOTT COUNTY, KANSAS, et al., Defendants.**

**Civil Action No. 94–1134–FGT.**

United States District Court, D. Kansas.

March 17, 1997.

---

Caleb Boone, Hays, KS, for plaintiff.

Allen G. Glendenning, Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Great Bend, KS, for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on defendants' motion for summary judgment (Doc. 123) and on plaintiff's motion for reconsideration of the court's order dismissing the claims against one of the defendants (Doc's 110 & 113).

## I. Facts in Evidence

Except as otherwise noted, the following facts are undisputed. On March 10, 1992, Richard Gaschler, the plaintiff in this case, stopped on his way home from work to drink beer. He drank an unknown quantity of beer. Also on the way home, he purchased a fifth of whiskey, which be began to drink upon arriving at home. The plaintiff became intoxicated, and as he did so he became angry and "took it out" on his family. Plaintiff argued with his adult daughter about his involuntary hospitalization for alcoholism treatment in 1990, two years earlier. At approximately 11:00, plaintiff's wife, Donna Gaschler, went into the daughter's bedroom to hide from plaintiff. She remained hidden for over two hours. During this time, plaintiff's daughter came in the room to go to bed. Plaintiff later opened the bedroom door and threw a chair at his daughter. There is conflicting evidence about whether the chair was broken, but the daughter apparently was unharmed.

At some time during the course of that evening, plaintiff went into the bathroom and threw the whiskey bottle at the toilet, breaking both the bottle and the toilet seat. Plaintiff also picked up a loaded shotgun at some unknown time that evening. On two prior occasions, plaintiff had picked up a gun while intoxicated and discharged it in the house.

Plaintiff called the Scott County Sheriff's Department and requested that an officer be dispatched to remove his daughter from the house. Deputy R.W. Mitchell, one of the defendants in this case, was dispatched to the plaintiff's home. Three other officers, also named defendants, responded as well.

Just before the officers arrived, Donna Gaschler left her daughter's bedroom and went outside. She was upset and does not know why she went outside. When Mitchell arrived at the home, he encountered plaintiff's wife in the yard. Mitchell could see that she was upset and shaken. Donna Gaschler told Mitchell that her husband was in the house with a gun and that her kids were also in the house. Mitchell was reasonably concerned for the safety of the children.

Upon entering the house, Mitchell and Deputy Strickert made contact with the plaintiff. Plaintiff demanded that his daughter be removed from the house. Mitchell could smell alcohol on plaintiff's breath, and plaintiff appeared to be intoxicated.

Strickert took plaintiff upstairs to his bedroom to get dressed. Meanwhile, Mitchell talked to Donna Gaschler and was informed that she had been hiding in her daughter's room and that plaintiff had been yelling and had thrown a chair. Mitchell saw the chair in the bedroom and the broken whiskey bottle and broken toilet seat in the bathroom.

The plaintiff had on other occasions become intoxicated and verbally abusive to his family. However, on the night of March 10,

1992, he was unusually violent in that plaintiff was throwing objects in the house. Donna Gaschler was afraid that plaintiff would harm members of the family and so informed the officers. Mitchell concluded that plaintiff had been the aggressor in the situation that evening.

Deputy Mitchell advised plaintiff that he was under arrest, had plaintiff turn his back to him, and placed one handcuff on one of plaintiff's hands. There is some dispute as to what happened next. According to the testimony of the officers and plaintiff's daughter, plaintiff then jerked loose from Mitchell's hold and turned around to face Mitchell. At that point, Mitchell did not have a hold on any part of plaintiff's body and believed that plaintiff was resisting arrest and presented a danger to himself and others in the room, particularly if he should start to swing the dangling handcuff. Mitchell grabbed the plaintiff in a bear hug and pushed him toward an easy chair in the room. However, plaintiff fell into a table next to the chair and the footrest on the chair, hitting his ribs and his jaw. Officer Thomas, the only other officer in the house at the time of the handcuffing, also believed plaintiff presented a danger to himself and others and helped Mitchell hold plaintiff in the chair while Mitchell completed the handcuffing.

Plaintiff contends that he did not "jerk" loose from Mitchell's hold, that rather he "straightened" and turned to face Mitchell. Plaintiff also testified in deposition that Mitchell "threw" him toward the chair and table rather than pushed him. Plaintiff alleges no other acts of force committed by Mitchell or any of the other officers.

Plaintiff was taken to the Scott County jail, where he remained until March 16, 1992. Plaintiff was brought before the magistrate on March 12, 1992. At that time, the court determined that there was probable cause to hold the plaintiff and that there was a danger to victims and witnesses which necessitated holding plaintiff without bond.

In the meantime, a care and treatment case was initiated for the purpose of having plaintiff involuntarily committed for treatment of alcoholism. Plaintiff's brother, John Gaschler, signed the care and treatment petition, which stated in part:

Richard drinks daily, generally a bottle a day plus beer. He is verbally & emotionally abusive to his wife and two children. He threatens to kill his wife, his children and himself. All this being done while he is drunk. He is likely to do injury to himself or others if not immediately detained. He has recently been arrested as a result of domestic violence.

On March 19, 1992, the court held a probable cause hearing in the care and treatment case. Defendant Mitchell testified at that hearing as to the events of March 11. Also testifying at that hearing was Roberta Barber, an outreach and outpatient counselor for St. Joseph Hospital's Chemical Dependency Program. Barber was related to the plaintiff by marriage and had had contact with plaintiff's family. Barber had received information from plaintiff's family about their concern regarding the plaintiff's alcoholism. After plaintiff's arrest or March 11, 1992, Barber had spoken with the plaintiff on two occasions and conducted an interview and examination of him. Barber testified at the probable cause hearing that the plaintiff had a severe addiction to alcohol, as well as to Serax and Halcion, that he posed a danger to himself or others, and that he was in need of inpatient treatment for alcoholism. Also before the magistrate was a letter written by Dr. Robert Rosin at the county attorney's request. Dr. Rosin, who had examined plaintiff on the night of his arrest, expressed his opinion that plaintiff was a danger to himself or others due to alcoholism. The magistrate found probable cause to believe that plaintiff was "incapacitated by alcohol, that he is a danger to himself or others." The magistrate ordered that plaintiff be involuntarily committed.

Plaintiff was evaluated by counselors at St. Joseph's and found to be in need of inpatient treatment for alcoholism. However, plaintiff refused to cooperate with treatment. He was dismissed from the hospital on April 16, 1992. The care and treatment case was dismissed on April 20, 1992.

Plaintiff contends he was not given access to an attorney or to the courts from March 19, 1992, until April 16, 1992, while he was hospitalized at St. Joseph's. The only relevant evidence in the record shows that plaintiff did, in fact, communicate with his attorney and have papers filed in court on his behalf during that time. There were no restrictions placed on plaintiff's ability to send or receive faxes, mail or telephone calls while he was hospitalized in Larned. Plaintiff also had access to the telephone and the mails while he was in the Scott County jail after leaving the hospital.

Plaintiff counters that he did not have access to the courts or an attorney because he was mentally incapacitated and therefore unable to look after his own interests. However, the plaintiff's deposition testimony indicates only that plaintiff was upset at being detained against his will. He testified he was so angry he could not think straight. At most, according to his testimony, plaintiff was incapacitated for thirty-six hours while in the Scott County jail due to some medication prescribed by Dr. Rosin. After that, plaintiff refused to take the medication, and his testimony indicates that he does not believe he was incapacitated by the medication once he stopped taking it.

On April 27, 1992, the magistrate issued a bench warrant for the plaintiff. Defendants Mitchell and Kuhlman arrested plaintiff pursuant to that warrant. The warrant appeared valid, and neither officer had any information that it was invalid. A bond hearing was held on April 30, 1992, at which plaintiff was represented by an attorney. Other hearings were held on May 13, 1992, and June 2, 1992. Plaintiff was represented by counsel at both. At the conclusion of the June 2 hearing, plaintiff was released on bond. Plaintiff concedes that he was not under a legal disability at any time after June 2, 1992. The criminal case against plaintiff was dismissed without prejudice on December 1, 1992, and was never refiled.

The plaintiff filed this § 1983 action on April 8, 1994.

As stated above, plaintiff had previously been involuntarily committed for treatment of alcoholism. In 1990, he was hospitalized at St. John's Hospital in Salina, Kansas. At that time, it was determined that plaintiff was in need of such treatment. Nevertheless, as in 1992, plaintiff refused to cooperate with the recommended treatment and was eventually released.

Plaintiff contends that defendant Mitchell has an "awful reputation" as a bully, that he has a tendency to beat up people in arrest situations. In support of this contention, plaintiff offers the deposition testimony of several witnesses. All told, there is non-hearsay evidence of three or four instances of force used by Mitchell. There is no evidence, however, that any of these incidents were reported to the Scott County sheriff or the Board of Commissioners. Plaintiff contends the county officials wrongfully hired, trained and retained defendant Mitchell, but offers no evidence in support of that contention.

Plaintiff contends he did not need treatment for alcoholism in March 1992. In support of that contention, and in support of his motion for reconsideration of this court's disposition of the claims against Dr. Rosin, plaintiff offers the affidavit of Ari Kiev, M.D. Attached to the affidavit is a letter stating Dr. Kiev's opinion as an expert witness. (Doc. 111). That letter states in part:

"I am familiar with the standard of care applicable to physicians and surgeons in communities such as Scott City, Kansas and those of similar size through the United States.

. . .

"[I]t is my expert psychiatric opinion in terms of a reasonable degree of medical certainty that it is more probably true than not that Dr. Rosin, Defendant in this case conducted himself below the standard of care applicable to physicians and surgeons and doctors of medicine in communities such as Scott City, Kansas and those of similar size in Kansas and throughout the United States, when he evaluated Richard Gaschler for possible mental health or alcohol commitment as relevant to this case.

"It is also my expert psychiatric opinion in terms of a reasonable degree of medical certainty that it is more probably true than

not true that the actions of Dr. Rosin outside the standard of care caused Richard Gaschler to be committed for alcohol/mental health care, that is to say that the actions of Dr. Rosin were the proximate cause of the commitment of Richard Gaschler for alcohol/mental health care and treatment at St. Joseph's Hospital of Larned, Kansas.

"It is also my expert psychiatric opinion in terms of a reasonable degree of medical certainty that it is more probably true than not that Dr. Rosin in his actions in care and [treatment] of Richard Gaschler was guilty of deliberate indifference to the health, safety and welfare of Richard Gaschler, in light of the applicable standard of care as stated above.

. . .

"As stated above, it is my expert psychiatric opinion in terms of a reasonable degree of medical certainty that it is more probably true than not true that Dr. Rosin's letter was the critical factor in causing Mr. Gaschler to be committed to St. Joseph's Hospital of Larned, Kansas, since the statute for commitment required the opinion of a practicing physician or psychologist to be presented to the court at the outset in order to effect commitment.

"Finally, it is my medical opinion based on a reasonable degree of medical certainty that it is more probably true than not true that by recommending commitment for Mr. Gaschler, Dr. Rosin was guilty of deliberate indifference to the health, safety and welfare of Mr. Gaschler insofar as in recommending commitment under the alcohol commitment statute he was basically initiating a course of action which would make it probable that Mr. Gaschler would be hospitalized for a period of about 30 and up to 90 days. To set such an extended commitment program into effect in the absence of clearcut evidence of suicidal risk or risk to others is clearly reflective of deliberate indifference to the consequences of such treatment to the health, safety and welfare of Mr. Gaschler."

## II. Summary Judgment Standards

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evi-

dence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

## III. Section 1983 claims

Plaintiff brings several claims pursuant to 42 U.S.C. § 1983. First, plaintiff alleges that defendant R.W. Mitchell used excessive force against plaintiff in arresting him on March 11, 1992, and that the remaining defendants are liable for Mitchell's use of excessive force. Second, plaintiff alleges that his right to due process was violated. Third, plaintiff contends his right to be free from unreasonable seizure was violated (malicious prosecution). Finally, plaintiff contends that he was not permitted to speak to an attorney for four days following his March 11, 1992, arrest, thus depriving him of his right to counsel. Plaintiff brings these claims against all defendants.[1] Defendants present several arguments for summary judgment as to each of these claims.

### A. Statute of Limitations

■ Defendants argue that plaintiff's federal claims based on the arrest of March 11, 1992, are barred by the applicable statute of limitations. Claims brought under § 1983 are governed by a two-year statute of limitations. *Garcia v. Wilson*, 731 F.2d 640 (10th Cir.1984), *aff'd*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Cowdrey v. City of Eastborough*, 730 F.2d 1376 (10th Cir.1984). There is no dispute that plaintiff filed this action on April 8, 1994, more than two years after March 11, 1992. However, plaintiff argues that he was incapacitated for seventy-two days while he was incarcerated and hospitalized, thus tolling the statute of limitations.

Plaintiff relies on K.S.A. § 60–515(a) for the proposition that the statute of limitations

is tolled while a person is under a disability. In fact, § 60–515(a) provides that if a person is under a disability at the time a cause of action accrues or while the statute of limitations is running, "such person shall be entitled to bring such action within one year after the person's disability is removed."

■ Assuming the plaintiff in this case was ever under a legal disability within the meaning of § 60–515(a), plaintiff concedes that he was not under such a disability at any time after June 2, 1992. Because plaintiff did not file claim within one year of that date, § 60–515(a) cannot save his claim from the statute of limitations. Section 60–515(a) does not, as plaintiff contends, toll the statute of limitations while a person is under a legal disability. Rather, it provides only that once the disability is lifted, plaintiff has one year within which to file his claim even if the statute of limitations has run or will have run before that year is ended.

■ Accordingly, plaintiff's claim of excessive force and wrongful arrest on March 11, 1992, are time-barred because the case was not filed within two years of the accrual of the causes of action, nor within one year of the end of any legal disability plaintiff suffered. Plaintiff's claims sounding in malicious prosecution, however, were filed within two years of when those causes of action accrued. A cause of action for malicious prosecution accrues when the underlying case is terminated in plaintiff's favor. *Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan.App.2d 461, 462, 701 P.2d 977 (1985). Here, the criminal case was dismissed on December 1, 1992, and the care and treatment case was dismissed on April 20, 1992.[2]

### B. Malicious Prosecution

■ The Tenth Circuit recognizes a cause of action under § 1983 based on malicious prosecution. *Taylor v. Meacham*, 82

---

1. The court has read plaintiff's Amended Complaint, as well as the memoranda related to the various dispositive motions. It has been difficult to discern from these documents just what claims the plaintiff intends to state, and which claims are brought against which defendants. Accordingly, the court has relied on the Theories

of Recovery section of the pretrial order (Doc. 122) for that information.

2. Plaintiff contends that the cause of action does not accrue until the statute of limitations has run for refiling the actions. If this were the case, plaintiff's claims would be premature.

F.3d 1556, 1560 (10th Cir.), *cert. denied,* ——— U.S. ———, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996). The elements of a common law claim for malicious prosecution are the starting point for the court's analysis of a similar claim under § 1983, but ultimately the plaintiff must prove a deprivation of constitutional dimensions. *Id.* at 1561. Malicious prosecution claims brought under § 1983 are governed by the Fourth Amendment reasonableness standard. *Id.* (citing *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

█ Under Kansas law, the plaintiff in a malicious prosecution case must prove: (1) that the defendant instituted, procured or continued the criminal proceeding of which the complaint is made, (2) that the defendant in so doing acted without probable cause and with malice, (3) that the proceeding terminated in favor of the plaintiff, and (4) that the plaintiff sustained damages. *Braun v. Pepper,* 224 Kan. 56, 58, 578 P.2d 695 (1978); *Thompson v. General Finance Co.,* 205 Kan. 76, Syl. ¶ 5, 468 P.2d 269 (1970).

█ In this case, the court need consider only the second element of the cause of action. Having reviewed the evidence in the record, the court concludes that probable cause existed for prosecution of the criminal case and the care and treatment case.[3] Where the evidence is undisputed, the issue of probable cause is a question of law for the court to decide. *Knight v. Cordry,* 22 Kan. App.2d 9, 913 P.2d 1206 (1995). Here, although there are some factual disputes, the court has considered the evidence in the light most favorable to the plaintiff.

The court looks first at the care and treatment case. Plaintiff's brother, John Gaschler, approached the county attorney about having the plaintiff committed for treatment of alcoholism. John Gaschler signed the petition which was filed with the court. The county attorney asked Dr. Rosin to write a letter to the court stating his opinion that plaintiff was a danger to himself or others, as required by Kansas statute. At the probable

cause hearing, the magistrate judge heard the testimony of Roberta Barber, a counselor for the chemical dependency program at St. Joseph's Hospital. Barber testified, based on information gathered by interviewing the plaintiff and his family and examining plaintiff, that plaintiff was addicted to alcohol and prescription drugs, that he was a danger to himself or others, and that he was in need of inpatient treatment for alcoholism. The magistrate also heard the testimony of defendant Mitchell concerning plaintiff's conduct on the night of March 10, 1992. Although plaintiff contends Mitchell's testimony was false, there is no evidentiary support for this allegation. Plaintiff's own deposition testimony indicates that he was intoxicated and verbally abusive to his family, that he had thrown objects in the house that evening, and that he resisted being handcuffed.

Plaintiff's continued insistence that he did not need alcoholism treatment, and plaintiff's expert witness's opinion that such treatment was not called for may raise an issue of whether the decision to commit the plaintiff was correct, but that is not the issue before the court. There is no genuine dispute that the evidence existing at the time the care and treatment case was prosecuted established probable cause for committing plaintiff. Probable cause does not require unanimity of opinion. Furthermore, plaintiff's expert witness did not appear until two years into the litigation of this case. His current opinion cannot defeat the probable cause that existed at the time the determination was made.

Because plaintiff has failed to establish a genuine issue as to whether there was probable cause to bring and prosecute the care and treatment case, the defendants are entitled to summary judgment on the § 1983 malicious prosecution claim arising out of that case.

█ This court dismissed the malicious prosecution claim against Dr. Rosin on the ground that he did not initiate the care and treatment case. (Doc. 107, Memorandum and Order of Feb. 22, 1996). The court's analysis applies equally to defendant Mitch-

---

3. The court does not address the preclusive effect of the probable cause determinations made in the underlying actions.

ell, who did no more than testify at the probable cause hearing. The plaintiff makes no allegation that any other defendant was in any way involved in the prosecution of the care and treatment case. For that additional reason, the defendants are entitled to summary judgment on this claim.

■ The court turns next to the criminal case, in which plaintiff was charged with assault on a law enforcement officer. Again, although plaintiff contends defendant Mitchell's testimony in this case was false, it does not differ materially from plaintiff's own account of the events of March 11, 1992. It is undisputed that plaintiff had his back to Mitchell when Mitchell began to handcuff him. After having one cuff placed on his wrist, plaintiff, in his words, straightened and turned to face defendant Mitchell. The handcuffs were dangling from plaintiff's wrist. Both Mitchell and defendant Thomas, the only other officer present in the room, testified that they believed plaintiff posed a danger to them and to others in the room at that time. The court also notes the undisputed account of plaintiff's violent behavior earlier that night. Under these circumstances, it was reasonable to conclude that plaintiff's conduct amounted to an assault on defendant Mitchell. The voluntary dismissal of the case and plaintiff's contention that he, in fact, did not intend to assault defendant Mitchell are insufficient, in light of the other undisputed evidence, to defeat probable cause. Therefore, the court grants summary judgment as to plaintiff's § 1983 malicious prosecution claim arising out of the criminal case.

■ The court's analysis of the malicious prosecution claim as to the criminal case applies equally to plaintiff's claim of wrongful arrest. The officers in this case had probable cause to arrest the plaintiff, not only for assault against a law enforcement officer, but also based on his conduct throughout the evening.

## C. Uncontested Portions of the Defendants' Motion

Defendants have moved for summary judgment on any claims regarding the arrest of plaintiff on April 27, 1992, and plaintiff's claim of violation of his right to an attorney. Plaintiff offers no opposition to these portions of the defendants' motion. Furthermore, the plaintiff has not alleged facts under which a reasonable jury could find a constitutional violation. The court notes also that any claim of denial of access to an attorney from March 11 to March 16, 1992, is time-barred. Accordingly, the court grants summary judgment to the defendants for any claims arising out of the April 27, 1992, arrest of the plaintiff and plaintiff's claim of violation of his right to counsel.

## IV. State Law Claims

Defendants seek summary judgment on plaintiff's state law claims, arguing several grounds. Plaintiff has presented no argument in opposition to the motion for summary judgment on these claims. The court, therefore, grants as uncontested the defendants' motion for summary judgment as to plaintiff's state law claims of malicious prosecution, assault and battery, and false arrest/imprisonment. At any rate, these claims are barred by the one-year statute of limitations, K.S.A. § 60–514(b) and by plaintiff's failure to follow the procedures required under the Kansas Tort Claims Act, K.S.A. § 12–105b(d).

## V. Motion to Reconsider

■ Plaintiff has moved for reconsideration of the court's decision to dismiss his claims against defendant Rosin. The refusal to grant relief in a motion to reconsider is reviewed under an abuse of discretion standard. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988). A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990); *Taliaferro v. City of Kansas City,* 128 F.R.D. 675, 677 (D.Kan.1989). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice."

*United States ex rel. Houck v. Folding Carton Administration Committee,* 121 F.R.D. 69, 71 (N.D.Ill.1988). Thus, a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider. *Renfro v. City of Emporia,* 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991), *cert. dismissed,* 503 U.S. 915, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992); *Butler v. Sentry Insurance,* 640 F.Supp. 806, 812 (N.D.Ill.1986). The court is not required to supply the rationale that the parties were unable to find. *See Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991) ("court will not construct arguments or theories for the [litigants] in the absence of any discussion of those issues").

 Plaintiff now asks the court to reconsider this ruling, in part on the basis of the same arguments and evidence he has previously raised. "A motion to reconsider or to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court." *All West Pet Supply Co. v. Hill's Pet Products Div., Colgate–Palmolive Co.,* 847 F.Supp. 858, 860 (citations omitted), *amended on other grounds,* 842 F.Supp. 1376 (D.Kan.1994).

Plaintiff next contends the court should reconsider its previous ruling in light of new evidence. This new evidence is the expert witness opinion of Dr. Ari Kiev, which is quoted at length above. The court concludes that Dr. Kiev's opinion does not form a basis for reconsideration, in part because the opinion is inadmissible as expert witness testimony.

 Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The touchstone for admissibility of expert testimony, then, is whether it will be helpful to the trier of fact. *Werth v. Makita Elec.*

*Works, Ltd.,* 950 F.2d 643, 648 (10th Cir. 1991). Exclusion of expert witness testimony is reviewed for abuse of discretion. *Id.* at 647.

 In this case, Dr. Kiev's testimony would not be helpful to the jury for several reasons. First, Dr. Kiev bases his opinion on a standard of conduct which is not applicable in this case. Dr. Kiev does state the opinion that Dr. Rosin exhibited deliberate indifference to the health, safety, and welfare of the plaintiff. However, he clearly states that he bases this opinion on the standard of care applicable to doctors in communities like Scott City, Kansas. In other words, it is his opinion that Dr. Rosin committed medical malpractice. As the court stated in its previous order, it is immaterial whether Dr. Rosin's evaluation of plaintiff constituted malpractice as malpractice is not actionable under § 1983. The court may exclude expert witness testimony which is based on an inapplicable standard of law. *See id.* at 650.

Second, the expert witness opinion includes legal opinions, including his opinion that Dr. Rosin's conduct was the proximate cause of plaintiff's commitment in light of the Kansas commitment statute. Even assuming this is a proper matter for expert witness testimony, this portion of Dr. Kiev's opinion is outside the field of psychiatry, in which Dr. Kiev is proffered as an expert. An expert witness is allowed to offer opinions only as to matters which are within the "reasonable confines of his subject area." *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir.1991).

 Third, Dr. Kiev's opinion does not meet the threshold of certainty for admissibility of an expert witness opinion. Absolute certainty is not required, but an expert witness must base his testimony on facts which lead him to a reasonably accurate conclusion. *See Gomez v. Martin Marietta Corp.,* 50 F.3d 1511 (10th Cir.1995). Dr. Kiev's opinion is quite equivocal; he states that he believes "to a reasonable degree of medical certainty" that certain facts are "more probably true than not true." Where, as here, such uncertainty is combined with other factors which undermine the reliability

of the testimony, the court may exclude the expert's opinion as not helpful to the trier of fact. 29 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6264 (1997).

For the foregoing reasons, the court concludes that Dr. Kiev's opinion testimony, as stated in his letter, would not be helpful to a factfinder in deciding the material issues in this case and would, therefore, be inadmissible. It likewise does not form a basis for reconsideration of this court's earlier ruling.

■ The court is aware that in the Tenth Circuit, expert witnesses are permitted to correct their testimony after initially giving opinions which are based on improper legal standards. *Werth,* 950 F.2d at 650. However, to permit Dr. Kiev to recast his opinion in terms that would render it useful under Rule 702[4] would not change the disposition of this case. Even if reworded as proper expert witness testimony for a case of this type, Dr. Kiev's after-the-fact opinion that plaintiff did not require inpatient treatment for alcoholism does not negate the probable cause existing at the time plaintiff was committed. Moreover, despite Dr. Kiev's opinion about Dr. Rosin's conduct, Dr. Rosin is entitled to absolute immunity as a witness for his conduct in writing the letter which was presented to the court. Witness immunity applies unless the witness "initiated" the proceeding against the plaintiff. Dr. Kiev is not entitled to express an opinion regarding whether Dr. Rosin initiated the care and treatment case, as that is a matter outside his field of expertise. Although Dr. Kiev finds fault with Dr. Rosin's evaluation, the plaintiff has not alleged any damages arising from the evaluation itself, but only from Dr. Rosin's letter to the court expressing the opinion that plaintiff was a danger to himself or others. As the court determined initially, this conduct is protected by the absolute immunity afforded a witness.

For the foregoing reasons, the court denies the plaintiff's motion to reconsider.

In the alternative, plaintiff has requested leave to file a Second Amended Complaint. The court denies the request. The court concludes that allowing the amendment would not cure the problems with plaintiff's case in light of the rulings above. *See Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983) (court may deny leave to amend where amendment would be futile). The court notes also that even if an amendment would cure the defects in the plaintiff's case, the motion comes quite late in the course of the litigation and would unfairly prejudice the defendants.

## VI. Show Cause Order

■ The court ordered the plaintiff to show cause why his claim under 42 U.S.C. § 1985(3) should not be dismissed as to all defendants. The plaintiff had not alleged any racial or other class-based discriminatory animus, which is an essential element of a claim under § 1985(3). The response time has long ago expired, and plaintiff has not responded to the show cause order. Accordingly, plaintiff's § 1985(3) claim is dismissed.

■ For similar reasons, the court dismisses any claim plaintiff intends to make under 42 U.S.C. § 1981.[5] A plaintiff in a § 1981 case must prove, as an essential element of the claim, intentional discrimination on the basis of race. *Olguin v. Lucero,* 87 F.3d 401, 405 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 436, 136 L.Ed.2d 334 (1996). In this case, the plaintiff has not alleged racial discrimination. Nor is there any evidence in the record to support such a claim.

## VII. Local Rule 56.1

Rule 56.1 of the United States District Court District of Kansas Rules of Civil Procedure provides in pertinent part:

---

4. The court assumes for the purpose of deciding this motion that Dr. Kiev would be willing to give testimony favorable to the plaintiff if he were apprised of the correct legal standards and the standard for expert witness testimony.

5. In the First Amended Complaint, plaintiff makes passing reference to § 1981, but it is not clear that he even intends to raise a claim under that section. The court exercises an abundance of caution in mentioning § 1981 at all.

A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party. The statements required by this subsection shall be in addition to the material otherwise required by these rules and the Federal Rules of Civil Procedure.

In this case, plaintiff has not complied with the local rule. He has made vague and conclusory denials of the defendants' statement of facts, which are insufficient under both the local rule and Federal Rule of Civil Procedure 56. He has lumped numerous allegations and citations together into a few paragraphs rather than addressing each discrete fact in a separately numbered paragraph. Plaintiff also string cites the record, expecting the court to determine what portion of the record plaintiff contends is support for his factual allegations. Finally, the plaintiff has failed in many instances to "refer with particularity to the portions of the record on which [he] relies," instead citing deposition excerpts as long as twenty-nine pages and containing a great deal of irrelevant information.

Because of plaintiff's lack of compliance with Rule 56.1, the court would be justified in considering all of the defendants' statements of fact to be admitted. However, the court has chosen not to do so. In fact, the court would not even address the matter of Rule 56.1 if there were any indication that counsel's misapprehension of the local rule has been alleviated. However, the court's experience with counsel in this and other cases indicates that counsel continues to misunderstand his obligations under the local rules.

The court suspects, as do the defendants, that the lack of compliance with the local rule

represents, at least in part, an attempt to obscure the issues and create the illusion of a genuine issue of material fact where none exists. To the extent that this was plaintiff's intent, he has been unsuccessful. Although the court does not deem the defendants' factual statements to be admitted in their entirety, neither does the court take the plaintiff's statements of fact at face value. The court has reviewed the exhibits on record in this case and has deemed uncontroverted those facts which plaintiff has attempted to dispute without any evidentiary support. The court has determined not to punish the plaintiff in this case for counsel's failure to comply with the local rules, but the court will not allow the defendants to be prejudiced by it either.

## VIII. Conclusion

For the foregoing reasons, the court grants the defendants' motion for summary judgment and denies plaintiff's motion to reconsider. The defendants have presented additional arguments in support of their motion for summary judgment. Because the court has concluded that the defendants are entitled to summary judgment on other grounds, the court need not consider those remaining arguments. The court has, however, considered and rejected every argument which plaintiff raises, or which the court can reasonably conclude that plaintiff has attempted to raise, in opposition to the motion for summary judgment or in support of the motion to reconsider.

IT IS BY THIS COURT THEREFORE ORDERED that defendants' motion for summary judgment (Doc. 123) is hereby granted.

IT IS FURTHER ORDERED that plaintiff's motion for reconsideration or in the alternative for leave to file an amended complaint (Doc.'s 110 and 113) is hereby denied.

IT IS FURTHER ORDERED that defendant Rosin's motion for summary judgment (Doc. 115) is moot.

IT IS FURTHER ORDERED that the plaintiff's claims under 42 U.S.C. §§ 1981

and 1985(3) are hereby dismissed as to all defendants.